# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| Jah Boone, Luis Gutierrez, Kurt Schay, Tifanie Booze, Ronald Wilkins, and Brad Hoffman, *on behalf of themselves and all others similarly situated,* | : <br> : <br> : <br> : <br> : <br> : **JURY DEMAND** |
| Plaintiffs, | : <br> : |
| vs. | : Civil Case No.: 3:22-cv-00191 |
| Nissan North America, Inc., | : <br> : |
| Defendant. | : <br> : <br> : |

## FIRST AMENDED CLASS ACTION COMPLAINT

For this First Amended Class Action Complaint, pursuant to Fed. R. Civ. P. 15(a)(1)(B) and the Court's July 11, 2022 Order (Doc. No. 21), Plaintiffs Jah Boone, Luis Gutierrez, Kurt Schay, Tifanie Booze, Ronald Wilkins, and Brad Hoffman, by undersigned counsel, state as follows:

## INTRODUCTION

1.     Plaintiffs bring this lawsuit on behalf of themselves and a proposed class of past and present owners and lessees of defective 2020-2021 Nissan Titan and 2020-2021 Nissan Frontier vehicles (collectively the "Class Vehicles") designed, manufactured, marketed, distributed, sold, warranted, and serviced by Defendant Nissan North America, Inc. ("Defendant" or "Nissan").

2.     Beginning in 2019, if not earlier, Nissan knew that the Class Vehicles contain one or more defects in the way the vehicles' transmissions are manufactured and/or made that cause the Class Vehicles to experience significant hesitation, lag, and delay when attempting to accelerate from a stop; cause the Class Vehicles to downshift abruptly and hard, resulting in

the vehicles jerking, and lurching forward when coming to a stop; and cause the Class Vehicles to emit clunking noises when shifting.

3.　　The common transmission defect is a safety hazard to drivers, passengers, and pedestrians because it results in the vehicles being unable to maintain the proper speed needed to safely integrate into the flow of traffic from a stopped position, increasing the likelihood that the Class Vehicles will be involved in a collision or accident. Moreover, where the defect results in the Class Vehicles lurching forward unintentionally, and without warning when coming to a stop, the defect places the Class Vehicles at an increased risk of colliding with another vehicle or pedestrian. *See, e.g.*:

- NHTSA Complaint No. 11437446, October 20, 2021 (2021 Nissan Titan): "The truck is prone to harsh transmission shifting. *It is abrupt and harsh enough when coming to a stop to create a safety issue. If one is not hard on the brakes at the time, the truck will lurch forward with the last downshifts, with the potential to strike pedestrians or the car in front*. My Titan has about 800 miles, and this behavior has been going on since I bought it recently. I will list today's date below since a date is required."

4.　　At least one Class Vehicle owner has complained that their "transmission completely shut down" while in heavy traffic, leaving the driver "stranded for almost two hours" which they described as "very dangerous."[1]

5.　　Despite knowing of the Class Vehicles' Transmission Defect, and that the vehicles were defective, and not fit for their intended purpose of providing consumers with safe, and reliable transportation at the time of the sale, and thereafter, Defendant has actively

---

[1] https://www.clubfrontier.org/threads/2021-nissan-frontier-shift-flare-9-speed-tranny.370720/ (On December 16, 2021, a Nissan Frontier owner complained "Hello.....my new Nissan Frontier....has 6000 miles. I was driving home from PA to Ohio on a major highway with extremely heavy traffic and my transmission completely shut down. I coasted to a stop and was stranded for almost two hours. ....very dangerous! ...almost got hit by a semi") (last visited March 10, 2022).

concealed the true nature and extent of the Transmission Defect from Plaintiffs, and the other Class Members, and failed to disclose it to them, at the time of purchase or lease, and thereafter.

6.    Additionally, Nissan has failed to adequately repair the defect under Nissan's warranty.  When Class Vehicle owners, including Plaintiffs, complain about the defect to Nissan dealerships, and seek repairs under Nissan's warranty, they are consistently told the Class Vehicles are operating normally, and are otherwise not provided any warranty repair attempts.  *See, e.g.*:

- NHTSA Complaint No. 11438639, October 29, 2021 (2021 Nissan Titan): "2021 Nissan Titan is having major transmission problems jerking when down shifting. This has become a serous issue when try to maintain speed. *I have taking [sic] the vehicle to the dealership to which I am told, 'Nissan is fully aware of the issue and is working on a fix'. This has been on going for close to a year.*"

- NHTSA Complaint No. 11441519, November 23, 2021 (2021 Nissan Titan): "Purchased vehi le with 2000 miles on it. Vehicle shifts very rough. When the transmission downshifts to stop it will bump or lerch [sic] forward. If you are not expecting it the truck will go forward. There is a lot of lag while accelerating. Dealer looked over vehicle and worked with Nissan to check several things. *The dealer techs all noticed the problem. They compared it to a new one and tne [sic] new one did the same thing.* It is a little frustrating because it acts like a damaged worn out transmission although the vehicle has very little miles and is babied."

- NHTSA Complaint No. 11453592, February 23, 2022 (2021 Nissan Titan): "Transmission issue: *Taking off from a complete stop at a traffic light or stop sign the truck is sluggish unless I give it about 1/4 throttle then it takes off slow it feels like its not in 1st gear. This is dangerous if trying to avoid incoming traffic while turning on a busy intersection. *There's occasions at a stop the truck surges forward by itself. *While driving and trying to pass a vehicle the transmission downshifted normal then it shifts up then down again. *When shifting from park to drive the transmission clunks. *When slowing down the downshift is harsh. *I have taken to the dealership 2 times their response its the nature of the transmission.*"

7.    Further, Nissan eventually came up with a software update that was designed to repair the Transmission Defect, however the proposed software update repairs are underinclusive (e.g., they do not apply to 2021 Nissan Titan vehicles), and even those Class

Vehicle owners that have received the software update report that the repair did not cure the defect and they continue to experience the symptoms of the Transmission Defect post-repair. Had Plaintiffs, and the Class Members known about the Transmission Defect, they would not have purchased the Class Vehicles, or would have paid substantially less for them.

8.     Despite being notified of the Transmission Defect from, among other things, pre-production testing, numerous consumer complaints (both to NHTSA and on Nissan Frontier and Titan enthusiast websites), warranty data, and dealership repair orders, Defendant has not recalled the Class Vehicles to repair the Transmission Defect, and has not offered its customers a suitable repair or non-defective replacement transmission free of charge.

9.     Nissan knew of and concealed the Transmission Defect that is contained in every Class Vehicle, along with the attendant dangerous safety problems, and associated repair costs, from Plaintiffs and the other Class Members both at the time of sale, repair and thereafter.

10.     As a result of their reliance on Defendant's omissions, and/or misrepresentations, owners, and/or lessees of the Class Vehicles have suffered ascertainable loss of money, property, and/or loss in value of their Class Vehicles.

11.     Plaintiffs have each given Nissan a reasonable opportunity to cure the Transmission Defect, but Nissan has refused to cure the defect, or otherwise has been unable to do so within a reasonable time.

12.     Nissan's conduct is in violation of the New Mexico Unfair Practices Act, N.M. Stat. § 57-12-1, *et seq.*; the South Carolina Unfair Trade Practices Act, S.C. Code Ann. § 39-5-10, *et seq.*; the Texas Deceptive Practices Act, Tex. Bus. & Com. Code § 17.41, *et seq.*; the Florida Deceptive and Unfair Trade Practices Act, F.S.A. § 501.201, *et seq.*; and constitutes

4

fraudulent concealment, unjust enrichment, and a breach of express and implied warranties; and the Magnuson-Moss Warranty Act.

13.     Nissan has and will continue to benefit from its unlawful conduct – by selling more vehicles, at a higher price, and avoiding warranty obligations  –  while consumers are harmed at the point of sale as their vehicles continue to suffer from the unremedied Transmission Defect.

14.     To remedy Nissan's unlawful conduct, Plaintiffs, on behalf of the proposed class members, seek damages, and restitution from Nissan, as well as notification to class members about the defect.

## PARTIES

15.     Plaintiff Jah Boone ("Plaintiff Boone" or "Mr. Boone") is an adult individual residing in Albuquerque, New Mexico.

16.     Plaintiff Luis Gutierrez ("Plaintiff Gutierrez" or "Mr. Gutierrez") is an adult individual residing in El Paso, Texas.

17.     Plaintiff Kurt Schay ("Plaintiff Schay" or "Mr. Schay") is an adult individual residing in Mooresville, North Carolina.

18.     Plaintiff Tifanie Booze ("Plaintiff Booze" or "Ms. Booze") is an adult individual residing in Council Bluffs, Iowa.

19.     Plaintiff Ronald Wilkins ("Plaintiff Wilkins" or "Mr. Wilkins") is an adult individual residing in Abilene, Texas.

20.     Plaintiff Brad Hoffman ("Plaintiff Hoffman" or "Mr. Hoffman") is an adult individual residing in Loxahatchee, Florida.

21.     Defendant Nissan North America, Inc. ("Nissan") is a Delaware corporation

with a principal place of business in Franklin, Tennessee.

22. At all times herein mentioned, Nissan designed, engineered, developed, manufactured, fabricated, assembled, equipped, tested or failed to test, inspected or failed to inspect, repaired, retrofitted or failed to retrofit, failed to recall, labeled, advertised, promoted, marketed, supplied, distributed, wholesaled, and/or sold the Class Vehicles, including the vehicles operated by Plaintiffs. Nissan also reviews, and analyzes warranty data submitted by Nissan's dealerships, and authorized technicians in order to identify defect trends in vehicles. Upon information and belief, Nissan dictates that when a repair is made under warranty (or warranty coverage is requested), service centers must provide Defendant with detailed documentation of the problem, and the fix that describes the complaint, cause, and correction, and also save the broken part in the event Defendant decide to audit the dealership. Nissan uses this information to determine whether particular repairs are covered by an applicable Nissan warranty, or are indicative of a pervasive defect.

## JURISDICTION AND VENUE

23. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) of the Class Action Fairness Act of 2005 because: (i) there are 100 or more class members; (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs; and (iii) there is minimal diversity because Plaintiffs and Class Members, and Defendant are citizens of different states.

24. This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiffs present a claim under the federal Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq*. As to the state law claims, this Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367.

6

25.     Personal jurisdiction, and venue are proper in this District as Defendant is headquartered in this District.

## FACTUAL ALLEGATIONS APPLICABLE TO INDIVIDUAL PLAINTIFFS

**I.     Jah Boone**

26.     On January 13, 2021, Mr. Boone purchased a new 2021 Nissan Titan, Vehicle Identification Number 1N6AA1ED0MN505089 (hereafter the "Boone Vehicle") from Melloy Nissan in Albuquerque, New Mexico, an authorized Nissan dealership.

27.     Prior to the purchase, Melloy Nissan assured Mr. Boone that the Boone Vehicle was accompanied by Nissan North America, Inc.'s written warranties; and was free from defects of workmanship; and that the car was safe and reliable.

28.     Shortly after Mr. Boone purchased his vehicle, he observed that when coming to a stop, the Boone Vehicle down-shifted extremely hard, and rough; and would jerk, and lurch forward immediately before coming to a full stop. On some occasions the Boone Vehicle jerked with such force that Mr. Boone initially had believed another vehicle had collided with the rear of the Boone Vehicle. Moreover, Mr. Boone observed that the Boone Vehicle consistently exhibited a lag and delay when Mr. Boone pressed the gas pedal, and attempted to get the Boone Vehicle to accelerate from a stop position.

29.     In or around May 2021, Mr. Boone brought his vehicle to Melloy Nissan, complaining about the above issues with the Boone Vehicle. In response, Melloy Nissan inspected the vehicle, and confirmed that it jerked. However, the dealer advised Mr. Boone that there were no repairs available and that despite the Boone Vehicle jerking when coming to a stop, the vehicle was allegedly operating normally. The dealer did not provide Mr. Boone with a written repair order documenting his complaint and request for a repair.

7

30.     On June 9, 2021, Mr. Boone brought his vehicle to Melloy Nissan complaining once again about the above issues with the Boone Vehicle, i.e., when coming to a stop, and attempting to accelerate the Boone Vehicle "will shudder/jerk."  In response to Mr. Boone's complaint and request for a repair, Melloy Nissan inspected the vehicle and confirmed that it "shifts soft [and] uneven."  Melloy Nissan attempted a repair on the Boone vehicle by performing a software update and reprogramming the Boone Vehicle's TCM (transmission control module) and ECM (engine control module).

31.     However, within days of the June 9, 2021 repair attempt, the Boone Vehicle continued to jerk, and run rough when coming to a stop and hesitating and lagging when attempting to accelerate; the Boone Vehicle continues to experience these issues to date.

32.     On March 11, 2022, Mr. Boone, through his counsel, sent a letter to Nissan advising it that the Boone Vehicle suffered from the Transmission Defect, and had not been repaired under Nissan's warranties.

33.     At all times, Mr. Boone has driven his vehicle in a foreseeable manner and in the manner in which it was intended to be used.

**II.     Luis Gutierrez**

34.     On March 2, 2021, Mr. Gutierrez purchased a new 2021 Nissan Titan, Vehicle Identification Number 1N6AA1ED8MN509956 (hereafter the "Gutierrez Vehicle") from Charlie Clark Nissan El Paso, in El Paso, Texas ("Clark Nissan"), an authorized Nissan dealership.

35.     Prior to the purchase, Clark Nissan assured Mr. Gutierrez that the Gutierrez Vehicle was accompanied by Nissan North America, Inc.'s written warranties; was free from defects of workmanship; and that the car was safe, and reliable.

8

36.     Shortly after Mr. Gutierrez purchased his vehicle, he observed that when attempting to accelerate from a stop, the Gutierrez Vehicle was "sluggish,"; exhibited a lag, and delay, hesitated, and jerked; and emitted a loud "clunk" noise.  Mr. Gutierrez was required to press the vehicle's gas pedal disproportionately hard to get the vehicle to accelerate.  Moreover, Mr. Gutierrez observed that his vehicle additionally down-shifts very roughly and abruptly as if its transmission skipped several gears, on occasion would lurch forward immediately before coming to a full stop, and would feel as if it hit a wall when coming to a complete stop.

37.     In or around April 2021, Mr. Gutierrez brought his vehicle to Clark Nissan complaining about the above issues with the Gutierrez Vehicle's transmission, and requested a repair.  In response, Clark Nissan told Mr. Gutierrez that the above issues are "normal," how the Gutierrez vehicle's transmission was supposed to operate, and there were no available repairs regarding the issue.

38.     In or around August 2021, Mr. Gutierrez brought his vehicle back to Clark Nissan complaining once again about the vehicle hesitating, and lagging when accelerating; and emitting a clunking noise.  In response, Clark Nissan again told Mr. Gutierrez that the above issues are "normal," the transmission was "sluggish" but there were no available repairs regarding the issue.

39.     On February 17, 2022, Mr. Gutierrez brought his vehicle to Clark Nissan complaining about the above issues for a third time.  In response, Clark Nissan inspected the vehicle but again told Mr. Gutierrez that there was purported nothing wrong with his vehicle, and the dealer declined to perform any repairs on the vehicle.

40.     Notwithstanding Clark Nissan's contentions, to date the Gutierrez Vehicle

9

continues hesitate, jerk, and emit a loud "clunk" noise when Mr. Gutierrez accelerates the vehicle from a stop.

41.     On March 7, 2022, Mr. Gutierrez, through his counsel, sent a letter to Nissan advising it that the Gutierrez Vehicle suffered from the Transmission Defect, and had not been repaired under Nissan's warranties.

42.     At all times, Mr. Gutierrez has driven his vehicle in a foreseeable manner and in the manner in which it was intended to be used.

**III.     Kurt Schay**

43.     On April 28, 2021, Mr. Schay purchased a new 2021 Nissan Titan, Vehicle Identification Number 1N6AA1ED0MN510244 (hereafter the "Schay Vehicle") from Rock Hill Nissan in Rock Hill, South Carolina, an authorized Nissan dealership.

44.     Prior to the purchase, Rock Hill Nissan assured Mr. Schay that the Schay Vehicle was accompanied by Nissan North America, Inc.'s written warranties; was free from defects of workmanship; and that the car was safe and reliable.

45.     Shortly after Mr. Schay purchased his vehicle, he observed that when coming to a stop, the Schay Vehicle down-shifted extremely hard, and rough; and would lurch forward immediately before coming to a full stop.

46.     On May 8, 2021, Mr. Schay presented his vehicle to Modern Nissan of Lake Norman, an authorized Nissan dealership in Cornelius, North Carolina complaining about the above issues, and that a 'check auto transmission' light illuminated while he was driving the vehicle.  In response, the dealership inspected the vehicle and determined that it was allegedly "working normally."  The dealer further told Mr. Schay that Nissan engineers were working on a software upgrade that would purportedly resolve the Transmission Defect, but it was not

10

available.

47.     On October 15, 2021, Mr. Schay presented his vehicle to Modern Nissan of Lake Norman and complained once again that the "transmission shifts hard and downshifts aggressively." In response, the dealership inspected the Schay Vehicle but did not attempt any repairs on the vehicle; the related repair order notes that the dealer "checked codes, test drove. No updates at this time." During the visit, the dealership told Mr. Schay that Nissan was "aware of situation"; was still working on a software update; and that the dealership had received similar complaints from other Class Vehicle owners that the Class Vehicles down-shift aggressively and abruptly.

48.     On March 11, 2022, Mr. Schay, through his counsel, sent a letter to Nissan advising it that the Schay Vehicle suffered from the Transmission Defect and had not been repaired under Nissan's warranties.

49.     In response to Mr. Schay's demand letter, Nissan agreed to inspect his vehicle. Thus, on June 1, 2022, Mr. Schay presented his vehicle to Modern Nissan of Lake Norman for an inspection and repair attempt. During the inspection, a Nissan regional engineer advised Plaintiff that Nissan was aware of the Transmission Defect and specifically that there is too much pressure on the Class Vehicles' transmissions when downshifting, and that Nissan would apparently be issuing another technical service bulletin to its dealers directing the dealers to attempt a repair by performing a software update. The regional engineer further advised Mr. Schay that he was able to access the forthcoming technical service bulletin even though the bulletin has not yet been issued to Nissan dealers, and he attempt the proposed repair on Mr. Schay's vehicle.

50.     Following the June 1, 2022 repair attempt, the Schay Vehicle's fuel economy

has dramatically decreased. Indeed, Mr. Schay regularly monitors his vehicle's fuel efficiency and has observed that prior to the repair attempt the Schay Vehicle's fuel efficiency was on average 16 miles per gallon. However, following the repair attempt, the Schay Vehicle's fuel economy has declined to approximately 10-12 miles per gallon. Thus, Nissan's not-yet-released repair attempt results in worse fuel economy, potentially increases the Class Vehicles' emissions, and results in Class Vehicle owners paying substantially more money to fuel the Class Vehicles.

51. At all times, Mr. Schay has driven his vehicle in a foreseeable manner and in the manner in which it was intended to be used.

**IV. Tifanie Booze**

52. On March 31, 2021, Ms. Booze purchased a new 2021 Nissan Titan, Vehicle Identification Number 1N6AA1ED0MN506422 (hereafter the "Booze Vehicle") from Nissan of Omaha in Omaha, Nebraska, an authorized Nissan dealership.

53. Prior to the purchase, Nissan of Omaha assured Ms. Booze that the Booze Vehicle was accompanied by Nissan North America, Inc.'s written warranties; was free from defects of workmanship; and that the car was safe and reliable.

54. Shortly after Ms. Booze purchased her vehicle, she observed that when attempting to accelerate from a stop position the Booze Vehicle hesitated and lagged, and that when coming to a stop, the Booze Vehicle down-shifted very roughly, jerks and would lurch forward immediately before coming to a full stop.

55. On April 16, 2021, Ms. Booze presented her vehicle to Nissan of Omaha and complained about the above issues. In response, the dealership inspected the vehicle, test drove it with Plaintiff and confirmed that it experienced the above shifting issues. The dealer

12

attempted a repair by performing a software update however the issues eventually returned thereafter.

56.     On December 28, 2021, Ms. Booze presented her vehicle to Nissan of Omaha and complained once again that her vehicle continued experience rough shifting. In response the dealership performed a software update but the repair attempt did not resolve the transmission issues.

57.     Ms. Booze subsequently presented her vehicle to Nissan of Omaha in or around March 2022 and complained about the persistent transmissions issues however the issues continued thereafter.

58.     When presenting her vehicle to Nissan of Omaha, the dealer told Ms. Booze that it had received similar such complaints from other Class Vehicle owners.

59.     The Booze Vehicle continues to experience the symptoms of the Transmission Defect.

60.     On June 28, 2022, Ms. Booze, through her counsel, sent a letter to Nissan advising it that the Booze Vehicle suffered from the Transmission Defect and had not been repaired under Nissan's warranties.

61.     At all times, Ms. Booze has driven her vehicle in a foreseeable manner and in the manner in which it was intended to be used.

**V.     Ronald Wilkins**

62.     On May 13, 2021, Mr. Wilkins purchased a new 2021 Nissan Titan, Vehicle Identification Number 1N6AA1ED3MN519097 (hereafter the "Wilkins Vehicle") from McGavock Nissan of Abilene ("Nissan of Abilene"), an authorized Nissan dealership.

63.     Prior to the purchase, Nissan of Abilene assured Mr. Wilkins that the Wilkins

Vehicle was accompanied by Nissan North America, Inc.'s written warranties; was free from defects of workmanship; and that the car was safe, and reliable.

64.     Shortly after Mr. Wilkins purchased his vehicle, he observed that when attempting to accelerate from a stop position, the Wilkins Vehicle exhibited a lag and delay. In addition, he observed that his vehicle downshifted roughly and would lurch forward immediately before coming to a full stop.

65.     On February 15, 2022, Mr. Wilkins brought his vehicle to Nissan of Abilene and complained about the above transmission issues, specifically that his vehicle will "jerk forward and make a clunking noise coming from the back" and there was a "delay when accelerating." The dealership then test drove the vehicle with Plaintiff and his wife and a dealership employee confirmed that she observed the vehicle's rough shifting and heard noises emanating from the rear of the vehicle. Nonetheless, the dealership did not attempt any repairs and found that the vehicle had the latest version of the ECM and TCM.

66.     On March 25, 2022, Mr. Wilkins, through his counsel, sent a letter to Nissan advising it that the Wilkins Vehicle suffered from the Transmission Defect, and had not been repaired under Nissan's warranties.

67.     The Wilkins Vehicle continues to experience the symptoms of the Transmission Defect.

68.     At all times, Mr. Wilkins has driven his vehicle in a foreseeable manner and in the manner in which it was intended to be used.

**VI.     Brad Hoffman**

69.     On June 28, 2021, Mr. Hoffman purchased a new 2021 Nissan Titan, Vehicle Identification Number 1N6AA1ED1MN520412 (hereafter the "Hoffman Vehicle") from I-95

14

Nissan in Riviera Beach, Florida, an authorized Nissan dealership.

70.     Prior to the purchase, I-95 Nissan assured Mr. Hoffman that the Hoffman Vehicle was accompanied by Nissan North America, Inc.'s written warranties; was free from defects of workmanship; and that the car was safe, and reliable.

71.     Shortly after Mr. Hoffman purchased his vehicle, he observed that when attempting to accelerate from a stop position, the Hoffman Vehicle lacked sufficient power, hesitated to accelerate and exhibited a lag, and delay.  In addition, Mr. Hoffman observed that when coming to a stop, his vehicle down shifted very harshly and jerked.

72.     On July 17, 2021, Mr. Hoffman presented his vehicle to I-95 Nissan and complained that his vehicle experiences the Transmission Defect, specifically that the vehicle lacked power when attempting to accelerate.  In response, the dealership inspected the vehicle but did not attempt any repairs on the vehicle.

73.     On November 29, 2021, Mr. Hoffman presented his vehicle to an authorized Nissan dealership and complained that his vehicle continues to experience the Transmission Defect.  Specifically, his vehicle suffers from hard down shifting. In response, the dealership did not attempt any repairs.

74.     On January 15, 2022, Mr. Hoffman presented his vehicle to I-95 Nissan and complained that his vehicle continues to experience the Transmission Defect.  Specifically, he complained that his vehicle is not shifting properly, at times takes too long to get into the proper gear and feels like it's shifting too soon.  He also complained that when his vehicle downshifts 'the gears will drop and not smoothly.'  In response, the dealer inspected the vehicle, determined that it has the 'current tcm [transmission control module] programming,' and did not attempt any repairs on the vehicle.

15

75.     On April 16, 2022, Mr. Hoffman presented his vehicle to Southern 441 Nissan, an authorized Nissan dealership located in Royal Palm Beach, Florida, and complained that his vehicle continues to experience the Transmission Defect.  Specifically, he experienced 'harsh' down shifting, and when down shifting and accelerating from a stop position the vehicle experiences a 'surge.'  In response, the dealer inspected the vehicle but advised Plaintiff there was 'no update available at this time.'

76.     On April 23, 2022, Mr. Hoffman presented his vehicle to I-95 Nissan and complained that his vehicle still experienced the Transmission Defect including hard down shifting and a hesitation when attempting to accelerate from a stop position. In response, the dealership inspected the vehicle but did not attempt any repairs.

77.     On May 27, 2022, Mr. Hoffman, through his counsel, sent a letter to Nissan advising it that the Hoffman Vehicle suffered from the Transmission Defect, and had not been repaired under Nissan's warranties.

78.     On July 12, 2022, Mr. Hoffman presented his vehicle to I-95 Nissan once again and complained that his vehicle continues to experience harsh down shifting.  In response, the dealership inspected the vehicle but did not attempt any repairs.

79.     At all times, Mr. Hoffman has driven his vehicle in a foreseeable manner and in the manner in which it was intended to be used.

## FACTUAL ALLEGATIONS

### The Transmission Defect

80.     Nissan began selling the Class Vehicles in or around February 2020.

81.     The Class Vehicles each contain 9-speed "GE9R01A" transmissions.

82.     Nissan claims that the Class Vehicles' "9-speed automatic transmission . . .

16

provid[es] smooth, fast acceleration"[2]

83.    Indeed, in a presentation announcing the release of the 2020 Nissan Titan, Nissan touted that the GE9R01A transmission "provid[es] more torque to the rear wheels in a given gear"; and allows for "smoother, improved acceleration", and "smoother operation":



84.    Nissan also claimed that the GE9R01A transmission's "smooth gearbox gives the powertrain a linear feel when shifting through the gears", and the transmission results in "upshift" being "more precise, while downshift delay time is reduced":

[2] https://usa.nissannews.com/en-US/releases/2021-nissan-titan-press-kit#:~:text=At%20a%20Glance%3A%20New%202021,safety%20and%20technology%20in%20class&text=Best%2Din%2Dclass%20standard%20400,with%209%2Dspeed%20automatic%20transmission (last visited March 7, 2022).



GE9R01A 9-Speed Transmission

Low gear ratios for 1st, 2nd, 3rd, 4th, and 5th gear help enhance acceleration. Overdrive ratios for 7th-9th gear helps lower engine RPM at highway speeds. The smooth gearbox gives the powertrain a linear feel when shifting through the gears.
Hydraulic multi-disc clutches and brakes in the automatic transmission apply gradually to help make application smooth, improving both shift stability and shift timing. Upshifts are more precise, while downshift delay time is reduced. Shift control and all functions of the transmission are controlled by the TCM on the valve body assembly inside the fluid pan.

A magnetic rotation sensor located on the valve body assembly detects revolution from a magnetic rotor on the rear planet. The TCM controls transmission functions and fluid flow control using solenoids mounted to the valve body assembly.

Magnetic Rotation Sensor

7

85.     Nissan has made similar claims regarding the Frontier Class Vehicles, e.g., "contributing to the 2020 Frontier's improved acceleration and fuel economy is the all-new 9-speed automatic transmission. It is similar to the new 9-speed automatic introduced on the 2020 TITAN and is designed to maximize powertrain efficiency and provide enhanced acceleration feel."[3]

86.     However, despite the above claims that the Class Vehicle's transmission provides "smoother, improved acceleration", and "smoother operation," the Class Vehicles suffer from a dangerous manufacturing, and/or design defect with the vehicles' transmissions which result in the Class Vehicles experiencing a significant hesitation, lag, and delay while attempting to accelerate from a stop, causes the Class Vehicles to downshift abruptly, and hard, resulting in the vehicles jerking and lurching forward when coming to a stop, and which

---

[3] https://usa.nissannews.com/en-US/releases/2020-nissan-frontier-press-kit#:~:text=The%202020%20Frontier%20features%20an,in%20the%20next%2Dgeneration%20Frontier

18

causes the Class Vehicle to emit clunking noises.

87.     Beginning in 2019, if not before, Nissan knew that the Class Vehicles contain one or more design, and/or manufacturing defects that can cause the Class Vehicles' transmission to malfunction as set forth above (the "Transmission Defect"). Nonetheless, Nissan has been unable to adequately repair the defect to date.

88.     On November 5, 2020, Nissan issued Technical Service Bulletin No. NTB20-077 which applies to 2020 Frontier and 2020-2021 Titan vehicles with the "9 Speed A/T (GE9R01A)" transmission. The bulletin provides instructions to its dealers when replacing the Class Vehicles' transmission valve body, but does not specifically address repairing the Transmission Defect. Nissan's inclusion of certain Class Vehicles in this Bulletin establishes that prior to November 2020 had already begun investigating transmission issues in the Class Vehicles' identical transmission and identified that such vehicles would require transmission repairs based on sources not available to the general public or Plaintiffs such as pre-release testing and early vehicle owner complaints made shortly after Nissan began selling the Class Vehicles.

89.     On April 6, 2021, Nissan issued Technical Service Bulletin No. NTB21-028, entitled "2020 Titan/Titan X; Delayed Acceleration or Delayed Upshift." The bulletin applies to 2020 Nissan Titan vehicles with 9 speed GE9R01A transmissions; it does not apply to 2021 Nissan Titan or 2020-2021 Nissan Frontier vehicles.   Bulletin No. NTB21-028 acknowledges that Class Vehicle owners "experience[ ] a hesitation in acceleration during a rolling stop, or delayed acceleration when pressing the accelerator pedal at or near 0 mph," and "[a] feeling of a delayed upshift or higher than expected engine RPM, while driving on a flat surface or up a small incline." It directs dealers to attempt a repair by performing a software update; and

19

reprogramming the vehicles' TCM (transmission control module), and ECM (engine control module).

90.     Accordingly, prior to the release of the above bulletin on April 6, 2021, Nissan had already determined that Class Vehicles' uniform 9 Speed A/t (GE9R01A) transmissions suffers from the Transmission Defect, specifically that the vehicles "experience[ ] a hesitation in acceleration during a rolling stop, or delayed acceleration when pressing the accelerator pedal at or near 0 mph," and "[a] feeling of a delayed upshift or higher than expected engine RPM, while driving on a flat surface or up a small incline."  Upon information and belief, by the second half of 2020 or early 2021 Nissan had already received enough Transmission Defect complaints from Class Vehicle owners such that Nissan identified the Transmission Defect as an emerging trend and determined that owners were complaining about the issue to such a degree that it needed to begin the months-long process of preparing and ultimately releasing a technical service bulletin to its dealers.

91.     On August 6, 2021, Nissan issued Technical Service Bulletin No. NTB21-073, entitled "Hesitation and/or Shift Shock" which applies to 2020-2021 Nissan Frontier vehicles. The Bulletin notes that Class Vehicle owners may "report[ ] hesitation and/or shift shock during acceleration" or "[s]hift shock during deceleration." Similar to Bulletin No. NTB21-028, Bulletin No. NTB21-073 directs dealers to attempt a repair by reprogramming the vehicles' TCM (transmission control module).  The bulletin establishes that Nissan was aware that the Transmission Defect can manifest in two separate scenarios as alleged above.

92.     Further, on September 14, 2021, Nissan issued Technical Service Bulletin No. NTB21-086, entitled "A/T Warning Light is on Without Past or Current DTC Stored," which applies to all Class Vehicles, i.e., 2020-2021 Titan and 2020-2021 Frontier vehicles with 9

speed GE9R01A transmissions. Consistent with the above bulletins, this bulletin directs that if dealers observe that the Automatic Transmission check warning light is illuminated, then the dealer should reprogram the TCM (transmission control module).

93. However, the proposed repair attempts set forth in the above bulletins, i.e., perform software updates and reprogram the vehicles' TCM and ECM, do not repair the Transmission Defect.

94. As set forth above, Melloy Nissan inspected Plaintiff Boone's vehicle and attempted a repair regarding the Transmission Defect by performing a software update and reprogramming the Boone Vehicle's TCM and ECM, however within days the vehicle continued to jerk and run rough when coming to a stop; and hesitate, and lag when attempting to accelerate.

95. Other Class Vehicle owners have likewise complained that their vehicles continue to experience the Transmission Defect following Nissan's proposed software updates. For instance, on December 27, 2021, one Class Vehicle owner inquired on a Titan-enthusiast website whether "Anyone kn[ew] if there have been any updates to the bulletin? I continue to feel that this update only got my truck 70-80% to where I wanted it to be when I had it done 8-9 months ago."[4] Another owner responded, in part, "As far as the transmission goes, it still flares every now and then and still behaves a little jerky at times. I am just going to deal with it until I figure out something else to buy that is reliable. "[5] Further, on February 3, 2022, another Class Vehicle owner complained that their vehicle's Transmission Defect had gotten worse post-repair: "I had mine done back in December and I thought it was better,

_____

[4] https://www.titantalk.com/threads/20%E2%80%99-titan-transmission-tsb.429773/page-9
[5] *Id.*

and maybe it was, but now I feel like it has regressed. Still occasionally jerky on accelleration and sometimes the transmission clunks on a downshift when slowing down."[6]

96.     Nissan's proposed repair likewise does not cure the Transmission Defect in Frontier Class Vehicles.  For instance, on November 16, 2021 a 2021 Frontier owner complained that their "transmission is still doing all kiknds [sic] of crazy stuff *even after the update*" and that they "wish [they] had known about this before [they] bought it."[7]

97.     Further, owners of 2021 Nissan Titan vehicles consistently complain that Nissan dealers fail to perform any repairs on their vehicles and no repair attempt is even available regarding their vehicles.  Neither Plaintiff Gutierrez nor Schay were provided with any repair attempts despite each complaining to a dealer and requesting a repair on multiple occasions.  And while Mr. Schay was eventually provided with a repair attempt in June 2022 following the filing of this lawsuit, Nissan's regional engineer performing the repair attempt advised Mr. Schay that the repair instruction has not yet been released to dealers via a technical service bulletin.  Further, as set forth above Mr. Schay reports that his vehicle's fuel economy has worsened following the repair attempt.

98.     Other owners have made similar complaints.  For instance, on April 27, 2021, one 2021 Nissan Titan owner noted that they complained about the issue to a Nissan dealer and was told "they don't have a fix for the 21' only the 20' so no update for me."[8] Likewise, on June 10, 2021, another owner of a 2021 Nissan Titan wrote that they "just had my '21 at the dealership this week to get the brakes checked and the transmission checked.

---

[6] *Id.*
[7] https://www.clubfrontier.org/threads/2021-transmission.373165/page-2 (emphasis supplied) (last visited March 10, 2022).
[8] https://www.titantalk.com/threads/20%E2%80%99-titan-transmission-tsb.429773/page-3 (last visited March 7, 2022).

They said they would apply the fix to a '21 if they found there to be an issue. They drove mine around for a day and said 'Nope, everything is fine. It's working as intended.' and *wouldn't apply the tranny update*."[9]   Further, on September 5, 2021, another 2021 Titan owner inquired whether and when Nissan would come up with a repair for the 2021 Titans and complained that when "Starting from a stop, especially a quick stop like a stop sign, is horrible and should have already been fixed on the '21 since they have a flash for the '20. Basically it feels like the transmission holds on to the higher gears too long and shifts down too late to allow a smooth re-acceleration. That makes sense to me since you get that 'bump' after coming to a complete stop when the transmission shifts down several gears after you have stopped moving. On the quick stops it also feels like it is slipping into another gear and you get a sudden jolt of acceleration after it downshifts."[10]   In response, Class Vehicle owners repeatedly complained that they were not offered repairs on their 2021 Titan vehicles and were told the defect is a normal characteristic of the vehicle.[11] Nissan had and has a duty to fully disclose the true nature of the Transmission Defect and the associated repair costs to Class Vehicle owners because, among other reasons,  the Defect poses an unreasonable safety hazard; because Nissan had and has exclusive knowledge or access to material facts about the Class Vehicles' transmissions that were and are not known to or reasonably discoverable by Plaintiffs and the other Class Members; and because Nissan has actively concealed the Transmission Defect from its customers.  Because the transmission contained in each Class Vehicle is defective, the Class Vehicles' transmissions should be repaired or replaced by

---

[9] https://www.titantalk.com/threads/throttle-delay-on-2021-titan-pro-4x.429238/page-4 (last visited March 7, 2022).
[10] https://www.titantalk.com/threads/any-news-rumors-on-21-transmission-flash.431034/ (last visited March 10, 2022)
[11] *See id.*

Nissan free of charge regardless of whether the Transmission Defect has manifested, or the facts and circumstances surrounding any failure.

**Nissan's Knowledge of the Defect**

99. Before Nissan sold Plaintiffs their Class Vehicles, Nissan was on notice that the Class Vehicles suffered from the Transmission Defect, however Nissan failed to disclose the existence of the defect to Plaintiffs or any other Class Vehicle owner.

100. Indeed, Nissan issued the above-discussed Technical Service Bulletin No. NTB20-077 on November 5, 2020 – before Plaintiffs purchased their vehicles – acknowledging that the Class Vehicles may require repairs on their identical and common transmission. Given the time it takes Nissan to gather relevant data, prepare the bulletin and release it to its dealers, Nissan was thus aware that the Class Vehicles suffer from transmission-related issues months before it issued the bulletin if not earlier.

101. The same is true of Nissan's subsequent April 6, 2021, Technical Service Bulletin No. NTB21-028, entitled "2020 Titan/Titan X; Delayed Acceleration or Delayed Upshift," which was released before Plaintiffs Schay, Wilkins and Hoffman purchased their vehicles, and which acknowledges that certain Class Vehicles with the same transmission shared by all Class Vehicles suffer from the Transmission Defect. Here too, given the time it takes Nissan to compile relevant consumer complaints and the results of pre-sale testing on the transmissions and then prepare and release the bulletin, the bulletin establishes that Nissan was aware of the Transmission Defect well before April 2021 and before the Plaintiffs purchased their vehicles.

102. Nissan became aware of the Transmission Defect through sources not available to Plaintiffs and Class Members, including, but not limited to, pre-production testing, pre-

24

production design failure mode, and analysis data; production design failure mode, and analysis data; early consumer complaints made exclusively to Nissan's network of dealers, and directly to Nissan; aggregate warranty data compiled from Nissan's network of dealers; testing conducted by Nissan in response to consumer complaints; and repair order, and parts data received by Nissan from Nissan's network of dealers.

103.    On information and belief, during the pre-release process of designing, manufacturing, engineering, and performing durability testing on the Class Vehicles, which would have occurred in 2019 before Nissan began selling the Class Vehicles in early 2020, Nissan necessarily would have gained comprehensive and exclusive knowledge that the Class Vehicles' transmissions cause the Class Vehicles to experience significant hesitation, lag, and delay while attempting to accelerate from a stop; cause the Class Vehicles to downshift abruptly, and hard, resulting in the vehicles jerking and lurching forward when coming to a stop, and cause the Class Vehicles to emit clunking noises.  Thus, during the pre-release analysis stage of the Class Vehicles, Nissan would have known that the Class Vehicles' 9 speed GE9R01A transmissions were defective, and would pose a safety risk to owners/lessees, and the motoring public.  Despite that such testing on the Class Vehicles revealed the Transmission Defect to Nissan, Nissan failed to remedy the manufacturing processes with the Class Vehicles before putting the vehicles into production and selling them to the public.

104.    Nissan also knew about the Transmission Defect because numerous consumer complaints regarding transmission-related issues (e.g., the Class Vehicles hesitated, and experienced delays accelerating from a stop or downshifted abruptly and hard, resulting in the vehicles jerking, and lurching forward when coming to a stop) were made directly to Nissan,

and its authorized dealerships. The large number of complaints, and the consistency of their descriptions of transmission issues alerted Nissan to this serious Defect affecting the Class Vehicles. The full universe of complaints made directly to Nissan about the Transmission Defect is information presently in the exclusive custody and control of Nissan, and is not yet available to Plaintiffs prior to discovery. However, upon information and belief, many Class Vehicle owners complained directly to Nissan and Nissan dealerships and service centers about the repeated transmission failures their Vehicles experienced.

105. Moreover, because the Transmission Defect can and does manifest almost immediately – often within days or weeks of the Class Vehicles first being driven – Nissan began receiving notification of the higher than expected number of transmission complaints made to Nissan dealers within days or at most weeks after Nissan began selling the Class Vehicles in early 2020.

106. Further, upon information and belief, since it began selling the Class Vehicles, Nissan has been tracking the performance of its 9 speed GE9R01A transmissions particularly closely because it planned to use the same transmission in other vehicles moving forward. Thus, one Class Vehicle owner wrote, "*My dealer told me Nissan is closely tracking the performance of the 9 speed transmission in our Titans because they are getting ready to put in many of the other models in their lineup*. They said it was put in the Titan first to test and work out any kinks. They said the Armada and Infiniti QX80 are set to get it in 2022, along with the new Frontier, Pathfinder and 400Z, among others."[12]

_____

[12] https://www.titantalk.com/threads/20%E2%80%99-titan-transmission-tsb.429773/page-8 (emphasis supplied).

**Customer Complaints and Online Discussions of the Defect:**

107.    Upon information and belief, thousands of purchasers, and lessees of the Class Vehicles have experienced the Transmission Defect.  Given how widespread the issue is and the fact that the defect manifests shortly after owners begin driving the vehicles, Class Vehicle owners have been complaining about the Transmission Defect directly to Nissan since early 2020 and have been posting such complaints online since at least January 2021. For instance, on January 21, 2021, a Class Vehicle owner inquired on a Nissan Titan-enthusiast website, "How are you 20-21 guys liking your 9 speed [transmission]?" and wrote that they "get a slight hesitation when leaving from a stop and its kinda jerky then the shift to 2nd and the power comes on and it smooths out. But 1st is not smooth at all. I get the jerky sensation when leaving at light throttle. Give it a good amount of gas and it leaves strong and smooth. But Im not trying to leave every light like im in a race."[13]

108.    On February 16, 2021, another Class Vehicle owner responded that they had already complained about the issue to a dealer: "My new 2021 Pro4x transmission (2,200miles) has a mind of its own. Occasionally (15% of the time),while decelerating and coasting to a stop ( at 0-5mph) the truck will downshift (hard) from 2nd to 1st and often propel the truck forward. *I took the truck into a Dealership where they confirmed the problem. They told me they spoke to Nissan and Nissan acknowledged the issue but said they don't have a fix for the problem at this time. Asked me to be patient and said 'it will be a process' for Nissan to figure out the problem.*"[14]  The same owner subsequently wrote that they "would

---

[13] https://www.titantalk.com/threads/how-are-you-20-21-guys-liking-your-9-speed.428877/ (last visited March 8, 2022).

[14] https://www.titantalk.com/threads/how-are-you-20-21-guys-liking-your-9-speed.428877/page-3 (emphasis supplied) (last visited March 8, 2022).

not consider my issue with the transmission' a little stutter'. While the issue doesn't happen all the time, when it does, *it literally will move the truck forward while at a complete stop*."[15] Moreover, a different owner noted on October 4, 2021 that they had experienced "[m]ajor hesitation when getting on the throttle, harsh down shifts that were very noticeable, stumbling through the gears with what felt like false neutral" and that they "bought [their] truck in January [2021] and complained from day one, and only recently when we got to summer, and warm weather did I feel like it was acting right. Now that its [sic] cooling off again it starts acting up"[16]

109.    Similarly, on January 6, 2021, another Class Vehicle owner posted on a Nisan Frontier-enthusiast that they purchased a 2020 Nissan Frontier and "there's a big delay or a drop from 1st to 2nd gear. Almost feels like a slip. . . . Also, just before coming to a complete stop, I feel like the brakes are pulsating or tranny is downshifting.... Are these things normal on the Frontier?"[17]  A different owner complained on January 27, 2021 that with respect to their 2021 Nissan Frontier,  "[t]he transmission in this truck leaves little to be desired. Many times it can't seem to figure out what gear to be in. 1st and 2nd gear, so close and just slammy. Get a clunk at that forty miles per hour mark when adding some power. For the life of me , I can't figure why they went with this Daimler 9g tronic transmission."[18]  On another Frontier-enthusiast website a Class Vehicle owner inquired "Have you noticed hard shifts when coming to a stop, seemingly from 3-2-1 and especially into 1st gear, it seems like a huge step

---

[15] *Id.* (emphasis supplied).
[16] https://www.titantalk.com/threads/how-are-you-20-21-guys-liking-your-9-speed.428877/page-4 (last visited March 8, 2022).
[17] https://www.clubfrontier.org/threads/new-2020-frontier-transmission-question.367379/

[18] https://www.clubfrontier.org/threads/not-very-happy-with-the-2020.367850/

down and the truck kind of lunges to a stop. Then there is a take off delay . . . ." and on February 22, 2021, a 2020 Frontier owner responded, "I have noticed a hard down shift to 1st if I make a hard sudden stop. Like the transmission stayed in 4th then right as I stop 'clunks' into first."[19]

110. There are numerous other instances where Class Vehicle owners complained about the Transmission Defect in early 2021 and noted that they already complained to Nissan dealers about the issue. On March 1, 2021, one 2021 Titan owner wrote that they "[j]ust bought a 2021 Pro 4x last week" and they were already experiencing "a delay in response when [they] press the pedal" which occurs "when I'm taking off from a stop or slow roll (1st gear)."[20] The owner further noted that when they "press the pedal down, even slightly, [there is] a good half second delay and then truck jolts forward like I've been spraying fuel for half a second before combustion happens", and that it happens "EVERY time" and there was "not even 200 miles" on the vehicle by that point.[21] On the same day, March 1, 2021, another owner noted, "Same thing is happening with mine, around 1k miles now. *I brought it back to dealer around 200 miles and they opened a tech ticket with nissan but did not find anything*" and they "*initially brought it back to dealer for the downshift issue, from 2nd to 1st there is a noticeable 'thunk.*'"[22] Moreover, the following day, March 2, 2021, the original Titan owner posted a copy of their repair order showing that they complained to a Nissan dealer on March 2, 2021 "that throttle response seems delayed" and the dealer inspected the vehicle and

---

[19] https://www.clubfrontier.org/threads/new-9-speed-transmission.361515/page-3 (last visited March 10, 2022)
[20] https://www.titantalk.com/threads/throttle-delay-on-2021-titan-pro-4x.429238/ (last visited March 7, 2022).
[21] *Id.*
[22] *Id.* (emphasis supplied).

determined that the vehicle "drives as designed due to newly develop 9-speed transmission, compare to another 21 model."[23] The owner clarified that the Nissan dealer advised "There was no difference between your truck or another 2021 but we could tell what you mean by driving the 2019. They essentially said the truck 'drives as designs' and is claiming that the new 9 Speed transmission (the 2019 had a 7 speed)."[24] Thereafter, dozens of other Class Vehicle owners noted they experienced the same symptoms of the Transmission Defect.[25] Similarly, a 2021 Nissan Frontier owner complained on May 9, 2021 that "[a]bout a month ago I bought a midnight edition 2021 frontier. Currently got 1200 miles on it. Just like others I am seeing some rough shifting between gears 1-3. There has also been a few times where it hesitate shifts between 1st-2nd. And coming to a sudden stop it hard downshifts back to 1st. Also notice a clicking noise right when you come to a complete stop, is this the transmission disengaging or just shifting back into 1st?"; they later noted that they "*already tried to address this with nissan and was told its operating normal. Also went to another dealership and test drove one and told them 'Im just looking' and the 2 that I tested did the same thing*."[26]

111.     Moreover, Class Vehicle owners have consistently lodged NHTSA complaints regarding the Transmission Defect.  The below example complaints, filed by consumers with NHTSA and posted on the Internet, which on information and belief Nissan actively monitored during the relevant time period, demonstrate that the Transmission Defect is widespread and dangerous and that Nissan has known about the defect at all relevant times:

---

[23] *Id.*

[24] *Id.*

[25] *See id.*

[26] https://www.clubfrontier.org/threads/2021-nissan-frontier-9speed.369848/ (emphasis supplied) (last visited March 10, 2022).

- NHTSA Complaint No. 11437446, October 20, 2021 (2021 Nissan Titan): "The truck is prone to harsh transmission shifting. It is abrupt and harsh enough when coming to a stop to create a safety issue. If one is not hard on the brakes at the time, the truck will lurch forward with the last downshifts, with the potential to strike pedestrians or the car in front. My Titan has about 800 miles, and this behavior has been going on since I bought it recently. I will list today's date below since a date is required."

- NHTSA Complaint No. 11438639, October 29, 2021 (2021 Nissan Titan): "2021 Nissan Titan is having major transmission problems jerking when down shifting. This has become a serous issue when try to maintain speed. I have taking the vehicle to the dealership to which I am told, 'Nissan is fully aware of the issue and is working on a fix'. This has been on going for close to a year."

- NHTSA Complaint No. 11439331, November 4, 2021 (2021 Nissan Titan): "I have a 2021 that is prone to harsh downshifts and jerking just before coming to a complete stop. I have taken the truck to the dealership and they informed me that their technician could not find anything wrong. The problem still continue to happen"

- NHTSA Complaint No. 11441519, November 23, 2021 (2021 Nissan Titan): "Purchased vehi le with 2000 miles on it. Vehicle shifts very rough. When the transmission downshifts to stop it will bump or lerch forward. If you are not expecting it the truck will go forward. There is a lot of lag while accelerating. Dealer looked over vehicle and worked with Nissan to check several things. The dealer techs all noticed the problem. They compared it to a new one and tne new one did the same thing. It is a little frustrating because it acts like a damaged worn out transmission although the vehicle has very little miles and is babied."

- NHTSA Complaint No. 11447847, January 18, 2022 (2021 Nissan Titan): "My 2021 Pro4x Titan with 6,400 miles has on numerous occasions not shifted up and out of 1st gear despite being in typical Drive, automatic transmission. I have owned the truck for just over 1 year and I have noticed this 10+ times when moving at slower speeds. I generally shift into Neutral and enter Drive again, which fixes the issue.

- NHTSA Complaint No. 11450516, February 4, 2022 (2021 Nissan Titan): "The transmission lags, slips gears, shift's harshly. When slowing down shifting from second to first gear around 15th, there is a very noticeable clunk in the transmission."

- NHTSA Complaint No. 11452288, February 16, 2022 (2020 Nissan Frontier): "The contact owns a 2020 Nissan Frontier. The contact stated that while driving at an undisclosed speed, the transmission shifted into NEUTRAL and the vehicle lost motive power. The check engine and transmission warning lights were illuminated. The vehicle was taken to the dealer and diagnosed with code P0729 (Gear 6

31

Incorrect Ratio). The dealer performed technical service bulletin NTB 21-086, Transmission Control Module (TCM) software update; however, the failure recurred with the engine revving while shifting gears. The vehicle was not repaired. The manufacturer was not made aware of the failure. The failure mileage was 6,784."

- NHTSA Complaint No. 11453592, February 23, 2022 (2021 Nissan Titan): "Transmission issue: *Taking off from a complete stop at a traffic light or stop sign the truck is sluggish unless I give it about 1/4 throttle then it takes off slow it feels like its not in 1st gear. This is dangerous if trying to avoid incoming traffic while turning on a busy intersection. *There's occasions at a stop the truck surges forward by itself. *While driving and trying to pass a vehicle the transmission downshifts normal then it shifts up then down again. *When shifting from park to drive the transmission clunks. *When slowing down the downshift is harsh. I have taken to the dealership 2 times their response its the nature of the transmission."

- NHTSA Complaint No. 11456717, March 15, 2022 (2021 Nissan Titan): "When slowing down the transmission will Jerk between gears 1 and 2 causing the truck to lunge forward."

- NHTSA Complaint No. 11458354, March 25, 2022 (2021 Nissan Titan): "1st issue was power steering failed while driving. All fluid was purged and steering became very difficult. No injuries nor damage occurred as vehicle was stopped safely. Repaired by dealer (12000mi) 2nd failure. Transmission failed shifting abruptly to first gear while driving in traffic. Vehicle was limped into parking lot. Vehicle towed to dealer, valve body replaced, vehicle returned after 1 week. 5 hours after pickup vehicle slammed back into 1st gear while driving causing similar issue in traffic. Vehicle back in dealership awaiting transmission from Nissan (13000mi)"

- NHTSA Complaint No. 11458879, March 29, 2022 (2021 Nissan Titan): "Transmission lags, and clunks. Will downshift unexpectedly upon deceleration causing the truck to lurch forward. Acceleration lags because vehicle does not shift correctly. This could put myself and others at risk. My truck only has 7,000 miles on it but the truck has done this since I got it brand new."

- NHTSA Complaint No. 11460270, April 9, 2022 (2021 Nissan Titan): "The gears shift rough causing the vehicle to jerk or down shifting early causing a stall when imcreasing accelaration. It is dangerous when you cant accelarate at times to avoid cars or merging on to the highway. I took it in and Nissan said this was fine and everything seemed normal."

- NHTSA Complaint No. 11462929, May 1, 2022 (2021 Nissan Titan): "Transmission downshifts hard from 2nd, to 1st, gear. When this happens, the truck jerks forward, and I have to now keep a big distance between me and the cars ahead of me."

- NHTSA Complaint No. 11463796, May 8, 2022 (2021 Nissan Titan): "Severe lag/hesitation on acceleration, hard shift lime being hit at around 10 mph and same issue when slowing down as it downshifts. Has happened intermittently for the last 2 months."

- NHTSA Complaint No. 11464136, May 11, 2022 (2021 Nissan Titan): "The transmission would jerk and clunky when coming to a stop and vibrate, shifting hard upon acceleration. Dealership refuses to acknowledge the problem."

- NHTSA Complaint No. 11465919, May 24, 2022 (2021 Nissan Titan): "Truck lags when taking off and has a severe downshift from 2nd to first gear. This causes the truck to jump forward when braking."

- NHTSA Complaint No. 11472262, July 4, 2022 (2021 Nissan Titan): "The vehicle will not move between lower level gears and will not accelerate when it is stuck. The vehicle will rev up very high but not switch gears even if you dig all the way in on the gas pedal. In fact, if you do that the engine makes a chirping noise. This defect prevented me from accelerating through an intersection and I nearly got hit by oncoming traffic. We have taken it to the Nissan dealership 3 times and they have said this is normal for this type of truck. We are taking this to an independent service center for a second opinion."

112. Although Nissan was aware of the widespread nature of the Transmission Defect in the Class Vehicles, and that it posed grave safety risks, Nissan has failed to take adequate steps to repair the Defect or notify Class Vehicle owners of the Defect.

113. Customers have reported the Transmission Defect in the Class Vehicles to Nissan directly and through its dealers. Defendant is fully aware of the Transmission Defect contained in the Class Vehicles. Nevertheless, Defendant actively concealed the existence and nature of the Defect from Plaintiffs and the other Class Members at the time of purchase or repair and thereafter. Specifically, Defendant:

    a. failed to disclose, at the time of purchase or repair and thereafter, any and all known material defects or material nonconformities of the Class Vehicles, including the Transmission Defect;

33

b.  failed to disclose, at the time of purchase or repair, and thereafter, that the Class Vehicles, and their transmissions were not in good working order, were defective, and were not fit for their intended purpose; and

c.  failed to disclose and/or actively concealed the fact that the Class Vehicles and their transmissions were defective, despite the fact that Defendant learned of the Transmission Defect as early as 2019.

114.  Defendant has deprived Class Members of the benefit of their bargain, exposed them all to a dangerous safety Defect, and caused them to expend money at its dealerships or other third-party repair facilities and/or take other remedial measures related to the Transmission Defect contained in the Class Vehicles.

115.  Defendant has not recalled the Class Vehicles to repair the Transmission Defect, has not offered to its customers a suitable repair or replacement parts related to the Transmission Defect free of charge, and has not reimbursed all Class Vehicle owners and leaseholders who incurred costs for repairs related to the Transmission Defect.

116.  Class Members have not received the value for which they bargained when they purchased or leased the Class Vehicles.

117.  As a result of the Transmission Defect, the value of the Class Vehicles has diminished, including without limitation, the resale value of the Class Vehicles.  Reasonable consumers, like Plaintiffs, expect, and assume that their vehicles will promptly accelerate when the driver presses the gas pedal, that the vehicle will smoothly transition from one gear to another, and not jerk and hesitate, or emit clunking noises, and that the vehicle will smoothly come to a stop and not lurch forward.   Plaintiffs and Class Members further expect and assume that Nissan will not sell or lease vehicles with known safety defects, such as the

34

Transmission Defect, and will fully disclose any such defect to consumers prior to purchase or offer a suitable non-defective repair. They do not expect that Nissan would fail to disclose the Transmission Defect to them, and then either tell them the defect was 'normal' or purport to remedy the defect with an underinclusive and inadequate repair attempt.

## CLASS ACTION ALLEGATIONS

### A. The Classes

118.   Plaintiffs bring this action on their own behalf, and on behalf of a nationwide class pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and/or 23(b)(3).

**Nationwide Class:** All persons or entities who purchased or leased any 2020-2021 Nissan Titan or Frontier vehicle in in the United States.

119.   In the alternative to the Nationwide Class, and pursuant to Fed. R. Civ. P. 23(c)(5), Plaintiffs seek to represent the following state-specific classes:

**Florida Class:** All persons or entities who purchased or leased any 2020-2021 Nissan Titan or Frontier vehicle in the State of Florida (the "Florida Class")

**Nebraska Class:** All persons or entities who purchased or leased any 2020-2021 Nissan Titan or Frontier vehicle in the State of Nebraska (the "Nebraska Class")

**New Mexico Class:** All persons or entities who purchased or leased any 2020-2021 Nissan Titan or Frontier vehicle in the State of New Mexico (the "New Mexico Class")

**South Carolina Class:** All persons or entities who purchased or leased any 2020-2021 Nissan Titan or Frontier vehicle in the State of South Carolina (the "South Carolina Class")

**Texas Class:** All persons or entities who purchased or leased any 2020-2021 Nissan Titan or Frontier vehicle in the State of Texas (the "Texas Class")

120.   Defendant and its employees or agents are excluded from the Class.

### B. Numerosity

121.   Upon information and belief, the Classes are each so numerous that joinder of

35

all members is impracticable. While the exact number and identities of individual members of the Classes are unknown at this time, such information being in the sole possession of Defendant, and obtainable by Plaintiffs only through the discovery process, Plaintiffs believe, and on that basis allege, that thousands of Class Vehicles have been sold and leased nationwide and throughout Florida, Nebraska, New Mexico, South Carolina, Texas.

### C.  Common Questions of Law and Fact

122.    There are questions of law and fact common to the Class that predominate over any questions affecting only individual Class members.  These questions include:

a.    whether the Class Vehicles suffer from the Transmission Defect;

b.    whether the Transmission Defect constitutes an unreasonable safety hazard;

c.    whether Defendant knows about the Transmission Defect and, if so, how long Defendant has known of the Defect;

d.    whether the defective nature of the Class Vehicles' transmissions constitutes a material defect;

e.    whether Defendant had and has a duty to disclose the defective nature of the Class Vehicles' transmissions to Plaintiffs and the other Class Members;

f.    whether Plaintiffs and the other Class Members are entitled to equitable relief, including, but not limited to, a preliminary and/or permanent injunction;

g.    whether Defendant knew or reasonably should have known of the Transmission Defect contained in the Class Vehicles before it sold or leased them to Class Members; and

h.    Whether Defendant breached its express warranty and the implied warranty of merchantability, engaged in fraudulent concealment and unjust enrichment, and

36

whether Defendant violated the New Mexico Unfair Practices Act, N.M. Stat. §

57-12-1, *et seq.*, the South Carolina Unfair Trade Practices Act, S.C. Code Ann.

§ 39-5-10, *et seq.*, the Texas Deceptive Practices Act, Tex. Bus. & Com. Code

§ 17.41, *et seq.*, the Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59-

1601, *et seq.,* the Florida Deceptive and Unfair Trade Practices Act, F.S.A. §

501.201, *et seq.,* and the Magnuson-Moss Warranty Act, as alleged in this

Complaint.

### D. **Typicality**

123.    The Plaintiffs' claims are typical of the claims of the Classes since Plaintiffs

purchased or leased defective Class Vehicles, as did each member of the Classes.

Furthermore, Plaintiffs and all members of the Classes sustained economic injuries arising out

of Defendant's wrongful conduct. Plaintiffs are advancing the same claims and legal theories

on behalf of themselves and all absent Class members.

### E. **Protecting the Interests of the Class Members**

124.    Plaintiffs will fairly and adequately protect the interests of the Class and have

retained counsel experienced in handling class actions and claims involving unlawful business

practices. Neither Plaintiffs nor their counsel has any interest which might cause them not to

vigorously pursue this action.

### F. **Proceeding Via Class Action is Superior and Advisable**

125.    A class action is the superior method for the fair and efficient adjudication of

this controversy. The injury suffered by each individual Class member is relatively small in

comparison to the burden and expense of individual prosecution of the complex and extensive

litigation necessitated by Defendant's conduct. It would be virtually impossible for members

of the Class individually to redress effectively the wrongs done to them. Even if the members of the Class could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, an economy of scale, and comprehensive supervision by a single court. Upon information and belief, members of the Class can be readily identified and notified based on, *inter alia*, Defendant's vehicle identification numbers, warranty claims, registration records, and database of complaints.

126.    Defendant has acted, and refused to act, on grounds generally applicable to the Classes, thereby making appropriate final equitable relief with respect to the Classes as a whole.

**FIRST CAUSE OF ACTION**
**Breach of Implied and Express Warranties Pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. §2301, *et seq.***

**(Plaintiffs on behalf of the Nationwide Class or in the alternative Plaintiff Boone on behalf of the New Mexico Class, Plaintiffs Gutierrez and Wilkins on behalf of the Texas Class, Plaintiff Schay on behalf of the South Carolina Class, Plaintiff Booze on behalf of the Nebraska Class and Plaintiff Hoffman on behalf of the Florida Class)**

127.    Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

128.    Plaintiffs and members of the Classes are each a "consumer" as defined in 15 U.S.C. § 2301(3).

129.    Defendant is a "supplier" and "warrantor" as defined in 15 U.S.C. § 2301(4) and (5).

130. The Class Vehicles are each a "consumer product" as defined in 15 U.S.C. § 2301(6). 15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with the written and implied warranties.

131. 15 U.S.C. § 2304(a)(1) requires Defendant, as a warrantor, to remedy any defect, malfunction or nonconformance of the Class Vehicles within a reasonable time and without charge to the Plaintiffs and Class members.

132. The Defendant's sale of the defective Class Vehicles and its failure and/or refusal to repair the Class Vehicles' Transmission Defect within the applicable warranty period constitutes a breach of the written and implied warranties applicable to the Class Vehicles.

133. Despite repeated demands, Defendant has failed to remedy the Class Vehicles' defects within a reasonable time, and/or a reasonable number of attempts, thereby breaching the written and implied warranties applicable to the Class Vehicles.

134. As a result of Defendant's breaches of the written and implied warranties, and Defendant's failure to remedy the same within a reasonable time, Plaintiffs and class members have suffered damaged.

**SECOND CAUSE OF ACTION**
**Fraudulent Concealment**

**(Plaintiffs on behalf of the Nationwide Class or in the alternative Plaintiff Boone on behalf of the New Mexico Class, Plaintiffs Gutierrez and Wilkins on behalf of the Texas Class, Plaintiff Schay on behalf of the South Carolina Class, Plaintiff Booze on behalf of the Nebraska Class, and Plaintiff Hoffman on behalf of the Florida Class)**

135. Plaintiffs incorporate by reference all allegations contained in this Complaint as though fully stated herein.

136. By failing to disclose, and concealing the defective nature of the Class

39

Vehicles' transmissions from Plaintiffs and Class Members, Nissan concealed, and suppressed material facts concerning the performance and quality of the Class Vehicles.

137.    Defendant knew that the Class Vehicles' transmissions suffered from an inherent defect, were defectively manufactured or made, would fail prematurely, and were not suitable for their intended use.

138.    Defendant was under a duty to Plaintiffs and the Class Members to disclose the defective nature of the Class Vehicles' transmissions because:

a.    Defendant was in a superior position to know the true state of facts about the safety defect contained in the Class Vehicles' transmissions;

b.    Plaintiffs and the Class Members could not reasonably have been expected to learn or discover that transmissions have a dangerous safety defect until after they purchased the Class Vehicles; and,

c.    Defendant knew that Plaintiffs and the Class Members could not reasonably have been expected to learn about or discover the Transmission Defect prior to purchase.

139.    On information and belief, Nissan still has not made full and adequate disclosures, and continues to defraud consumers by concealing material information regarding the Transmission Defect, and the performance and quality of Class Vehicles.

140.    The facts concealed or not disclosed by Defendant to Plaintiffs and Class Members are material in that a reasonable person would have considered them to be important in deciding whether or not to purchase the Class Vehicles.

141.    Plaintiffs and the Classes relied on Defendant to disclose material information it knew, such as the defective nature of the transmissions in the Class Vehicles, and not to

40

induce them into a transaction they would not have entered had the Defendant disclosed this information.

142. By failing to disclose the Transmission Defect, Defendant knowingly, and intentionally concealed material facts, and breached its duty not to do so.

143. The facts concealed, or not disclosed by Defendant to Plaintiffs, and the other Class Members are material because a reasonable consumer would have considered them to be important in deciding whether or not to purchase the Class Vehicles, or to pay less for them.

144. Had Plaintiffs and other Class Members known that the Class Vehicles suffer from the Transmission Defect, they would not have purchased the Class Vehicles or would have paid less for them.

145. Plaintiffs and the other Class Members are reasonable consumers who do not expect that their vehicles will suffer from a Transmission Defect. That is the reasonable and objective consumer expectation for vehicles and transmissions.

146. As a result of Defendant's misconduct, Plaintiffs and the other Class Members have been harmed and have suffered actual and economic damages in that the Class Vehicles are defective and require repairs, or replacement parts, and are worth less money because of the Defect.

147. Accordingly, Nissan is liable to Plaintiffs and Class Members for damages in an amount to be proven at trial.

148. Nissan's actions, and omissions were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Classes' rights and well-being, to enrich Nissan. Nissan's conduct warrants an assessment of punitive

41

damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

149.    Furthermore, as the intended and expected result of its fraud and conscious wrongdoing, Nissan has profited and benefited from Plaintiffs' and Class Members' purchase of Class Vehicles containing the Transmission Defect. Nissan has voluntarily accepted and retained these profits and benefits with full knowledge and awareness that, as a result of Nissan's misconduct alleged herein, Plaintiffs, and Class Members were not receiving vehicles of the quality, nature, fitness, or value that had been represented by Nissan, and that a reasonable consumer would expect.

150.    Nissan has been unjustly enriched by its fraudulent, deceptive, and otherwise unlawful conduct in connection with the sale and lease of Class Vehicles and by withholding benefits from Plaintiffs and Class Members at the expense of these parties. Equity and good conscience militate against permitting Nissan to retain these profits and benefits, and Nissan should be required to make restitution of its ill-gotten gains resulting from the conduct alleged herein.

## THIRD CAUSE OF ACTION
### Unjust Enrichment

**(Plaintiffs on behalf of the Nationwide Class or in the alternative Plaintiff Boone on behalf of the New Mexico Class, Plaintiffs Gutierrez and Wilkins on behalf of the Texas Class, Plaintiff Schay on behalf of the South Carolina Class, and Plaintiff Booze on behalf of the Nebraska Class, and Plaintiff Hoffman on behalf of the Florida Class)**

151.    Plaintiffs incorporate by reference all allegations contained in this Complaint as though fully stated herein.

152.    Nissan has long known that about the Transmission Defect which it concealed and failed to disclose to Plaintiffs and Class Members.

42

153.    As a result of its fraudulent acts, and omissions related to the Transmission Defect, Nissan obtained monies which rightfully belong to Plaintiffs, and the Class Members to the detriment of Plaintiffs, and Class Members.

154.    Nissan appreciated, accepted, and retained the non-gratuitous benefits conferred by Plaintiffs and the proposed Class Members who, without knowledge of the Transmission Defect, paid a higher price for their vehicles which actually had lower values. Nissan also received monies for vehicles that Plaintiffs and the Class Members would not have otherwise purchased or leased.

155.    It would be inequitable and unjust for Nissan to retain these wrongfully obtained profits.

156.    Nissan's retention of these wrongfully obtained profits would violate the fundamental principles of justice, equity, and good conscience.

157.    As a result of Defendant's unjust enrichment, Plaintiffs, and Class Members have suffered damages.

158.    Plaintiffs do not seek restitution under their Unjust Enrichment claim. Rather, Plaintiffs and Class Members seek non-restitutionary disgorgement of the financial profits that Defendant obtained as a result of its unjust conduct.

159.    Additionally, Plaintiffs seek injunctive relief to compel Defendant to offer, under warranty, remediation solutions that Defendant identifies. Plaintiffs also seek injunctive relief enjoining Defendant from further deceptive distribution, sales, and lease practices with respect to Class Vehicles, enjoining Defendant from selling the Class Vehicles with misleading information concerning the Transmission Defect; compelling Defendant to provide Class members with adequate repairs or with replacement components that do not

43

contain the defects alleged herein; and/or compelling Defendant to reform its warranty, in a manner deemed to be appropriate by the Court, to cover the injury alleged and to notify all Class Members that such warranty has been reformed. Money damages are not an adequate remedy for the above requested non-monetary injunctive relief.

**FOURTH CAUSE OF ACTION**
**Violation of the New Mexico Unfair Practices Act,**
**N.M. Stat. § 57-12-1, et seq.**

**(Plaintiff Boone on behalf of the New Mexico Class)**

160. Plaintiffs incorporate by reference all allegations contained in this Complaint as though fully stated herein.

161. Plaintiff Boone, the New Mexico Class Members, and Defendant are each "persons" under N.M. Stat. § 57-12-2(A).

162. At all relevant times, Defendant has engaged in "trade" and "commerce" under § 57-12-2(C) by advertising, offering for sale, selling, leasing, and/or distributing vehicles in the United States, including New Mexico, directly or indirectly affecting New Mexico citizens through that trade and commerce.

163. The allegations set forth herein constitute unfair, and unconscionable trade practices in violation of the New Mexico Unfair Practices Act, N.M. Stat. § 57-12-1, *et seq.*

164. By failing to disclose, and concealing the defective nature of the Class Vehicles' transmissions from Plaintiff Boone and the New Mexico Class Members, Defendant violated the New Mexico Unfair Practices Act as it represented that the Class Vehicles had characteristics and benefits that they do not have, represented that the Class Vehicles were of a particular standard, quality, or grade when they were of another, and advertised the Class Vehicles with the intent not to sell them as advertised.

44

165.    Defendant's unfair, and unconscionable trade practices occurred repeatedly in Defendant's trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

166.    Defendant knew that the Class Vehicles' transmissions suffered from an inherent defect, were defectively manufactured or made, and were not suitable for their intended use.

167.    Defendant was under a duty to Plaintiff Boone and the New Mexico Class Members to disclose the defective nature of the Class Vehicles' transmissions because:

a.    Defendant was in a superior position to know the true state of facts about the safety defect contained in the Class Vehicles' transmissions;

b.    Plaintiff Boone and the New Mexico Class Members could not reasonably have been expected to learn or discover that their transmissions have a dangerous safety defect until after they purchased the Class Vehicles; and,

c.    Defendant knew that Plaintiff Boone and the New Mexico Class Members could not reasonably have been expected to learn about or discover the Transmission Defect.

168.    The facts concealed or not disclosed by Defendant to Plaintiff Boone and the New Mexico Class Members are material in that a reasonable person would have considered them to be important in deciding whether or not to purchase the Class Vehicles.

169.    Plaintiff Boone and the New Mexico Class Members relied on Defendant to disclose material information it knew, such as the defective nature of transmissions in the Class Vehicles, and not to induce them into a transaction they would not have entered had the Defendant disclosed this information.

170. By failing to disclose the Transmission Defect, Defendant knowingly, and intentionally concealed material facts, and breached its duty not to do so.

171. Moreover, Defendant's intentional concealment of, and failure to disclose the Transmission Defect constitutes unfair and unconscionable trade practices because, to the detriment of Plaintiff Boone, and the New Mexico Class Members, that conduct took advantage of Plaintiff Boone, and the New Mexico Class Members' lack of knowledge, ability, and experience to a grossly unfair degree. Defendant's unfair and unconscionable trade practices were a producing cause of the economic damages sustained by Plaintiff Boone and the New Mexico Class Members.

172. The facts concealed, or not disclosed by Defendant to Plaintiff Boone and the New Mexico Class Members are material because a reasonable consumer would have considered them to be important in deciding whether or not to purchase the Class Vehicles, or to pay less for them.

173. Had Plaintiff Boone, and the New Mexico Class Members known that the Class Vehicles' transmissions were defective, they would not have purchased the Class Vehicles, or would have paid less for them.

174. Plaintiff Boone, and the New Mexico Class Members are reasonable consumers who do not expect that their vehicles will suffer from a Transmission Defect. That is the reasonable, and objective consumer expectation for vehicles and their transmissions.

175. As a result of Defendant's misconduct, Plaintiff Boone and the New Mexico Class Members have been harmed and have suffered actual and economic damages in that the Class Vehicles and their transmissions are defective and require repairs or replacement and are worth less money because of the Defect.

46

176. Plaintiff Boone has provided adequate notice to Defendant.

177. Plaintiff Boone, and the New Mexico Class Members should be awarded three times the amount of their economic damages because Defendant intentionally concealed and failed to disclose the defective nature of the Class Vehicles.

<u>FIFTH CAUSE OF ACTION</u>
**Breach of the Implied Warranty of Merchantability Pursuant to N.M. Stat. § 55-2-314**

**(Plaintiff Boone on behalf of the New Mexico Class)**

178. Plaintiffs incorporate by reference all allegations contained in this Complaint as though fully stated herein.

179. Defendant is a merchant with respect to motor vehicles.

180. The Class Vehicles were subject to implied warranties of merchantability running from the Defendant to Plaintiff Boone and the New Mexico Class Members.

181. An implied warranty that the Class Vehicles were merchantable arose by operation of law as part of the sale or lease of the Class Vehicles.

182. Defendant breached the implied warranty of merchantability in that the Class Vehicles suffer from the defects referenced herein, and thus were not in merchantable condition when Plaintiff Boone, and the New Mexico Class Members purchased or leased the Class Vehicles, or at any time thereafter, and the Class Vehicles are unfit for the ordinary purposes for which such vehicles are used. Specifically, the Class Vehicles were, and are not fit for their ordinary purpose of providing reasonably reliable and safe transportation because the Class Vehicles suffer from a Transmission Defect that can make driving unreasonably dangerous.

183. As a result of Defendant's breach of the applicable implied warranties, owners and lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or

47

value of their Class Vehicles. Defendant's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use.

## SIXTH CAUSE OF ACTION
### Breach of Express Warranty Pursuant to N.M. Stat. § 55-2-313

#### (Plaintiff Boone on behalf of the New Mexico Class)

184.    Plaintiffs incorporate by reference all allegations contained in this Complaint as though fully stated herein.

185.    In connection with the sale or lease of the Class Vehicles, Defendant provided Plaintiff Boone and New Mexico Class Members with a written warranty that provides, *inter alia,* that with respect to powertrain coverage Nissan would repair or replace defective powertrain components within the first 60 months in service.

186.    Plaintiff Boone and New Mexico Class Members relied on Defendant's warranties when they agreed to purchase, or lease the Class Vehicles, and Defendant's warranties were part of the basis of the bargain.

187.    Plaintiff Boone, and New Mexico Class Members submitted their Vehicles for warranty repairs as referenced herein. Defendant failed to comply with the terms of the express written warranty provided to each Class member by failing, and/or refusing to repair the Transmission Defect under the vehicle's warranty as described herein.

188.    Plaintiff Boone and New Mexico Class Members have given Defendant reasonable opportunities to cure the defect, but Defendant has been unable, and/or has refused to do so within a reasonable time.

189.    As a result of said nonconformities, Plaintiff Boone, and New Mexico Class Members cannot reasonably rely on the Class Vehicles for the ordinary purpose of safe, reliable, comfortable, and efficient transportation.

190. Plaintiff Boone, and New Mexico Class Members could not reasonably have discovered these nonconformities with the Class Vehicles prior to Plaintiff Boone and New Mexico Class Members' acceptance of the Class Vehicles.

191. Plaintiff Boone, and New Mexico Class Members would not have purchased or leased the Class Vehicles, or would have paid less for the Class Vehicles, had they known, prior to their respective times of purchase or lease, that Class Vehicles contained the Transmission Defect.

192. As a direct and proximate result of the willful failure of Defendant to comply with its obligations under the express warranties, Plaintiff Boone, and New Mexico Class Members have suffered actual, and consequential damages. Such damages include, but are not limited to, the loss of the use and enjoyment of their vehicles, and a diminution in the value of the vehicles containing the defects identified herein.

### SEVENTH CAUSE OF ACTION
**Violation of the South Carolina Unfair Trade Practices Act**
**S.C. Code Ann. § 39-5-10,** *et seq.*

**(Plaintiff Schay on behalf of the South Carolina Class)**

193. Plaintiffs incorporate by reference all allegations contained in this Complaint as though fully stated herein.

194. Plaintiff Schay, and Defendant are "persons" under S.C. Code Ann. § 39-5-10(a) because Plaintiff is a natural person, and Defendant is a corporation and/or other legal entity.

195. Defendant engaged in "trade" and "commerce" under S.C. Code Ann. § 39-5-10(b) by advertising, offering for sale, selling or distributing the subject vehicles, directly or indirectly affecting the people of South Carolina

49

196. The allegations set forth herein constitute false, misleading, or deceptive trade acts, or practices in violation of South Carolina's Unfair Trade Practices Act ("SCUTPA"), S.C. Code Ann. § 39-5-20(a), *et seq.*

197. Courts have consistently held that SCUTPA claims can be brought as class action claims in federal court. *See, e.g., Cohen v. Subaru of Am., Inc.*, 2022 WL 721307, at *29 (D.N.J. Mar. 10, 2022); *In re Hard Disk Drive Suspension Assemblies Antitrust Litig.*, 2021 WL 4306018, at *23–24 (N.D. Cal. Sept. 22, 2021); *Sandee's Catering v. Agri Stats, Inc.*, 2020 WL 6273477, at *11 (N.D. Ill. Oct. 26, 2020); *Smith-Brown v. Ulta Beauty, Inc.*, 2019 WL 932022, at *14 (N.D. Ill. Feb. 26, 2019); *In re Dealer Mgmt. Sys. Antitrust Litig.*, 362 F. Supp. 3d 510, 553 (N.D. Ill. 2019).

198. By failing to disclose, and concealing the defective nature of the Class Vehicles' transmissions from Plaintiff Schay, and South Carolina Class Members, Defendant violated the SCUTPA as it represented that the Class Vehicles had characteristics and benefits that they do not have, represented that the Class Vehicles were of a particular standard, quality, or grade when they were of another, and advertised the Class Vehicles with the intent not to sell them as advertised.

199. Defendant's unfair, and deceptive acts or practices occurred repeatedly in Defendant's trade or business, were capable of deceiving a substantial portion of the purchasing public and imposed a serious safety risk on the public.

200. Defendant knew that the Class Vehicles' transmissions suffered from an inherent defect, were defectively manufactured or made, and were not suitable for their intended use.

201. Defendant was under a duty to Plaintiff Schay, and the South Carolina Class

Members to disclose the defective nature of the Class Vehicles' transmissions because:

a.  Defendant was in a superior position to know the true state of facts about the safety-related transmission defect contained in the Class Vehicles;

b.  Plaintiff Schay, and the South Carolina Class Members could not reasonably have been expected to learn or discover that their vehicles' transmission has a dangerous safety defect until after they purchased the Class Vehicles; and,

c.  Defendant knew that Plaintiff Schay, and the South Carolina Class Members could not reasonably have been expected to learn about, or discover the Transmission Defect prior to purchase.

202.   The facts concealed or not disclosed by Defendant to Plaintiff Schay, and South Carolina Class Members are material in that a reasonable person would have considered them to be important in deciding whether or not to purchase the Class Vehicles.

203.   Plaintiff Schay, and South Carolina Class Members relied on Defendant to disclose material information it knew, such as the defective nature of the Class Vehicles' transmissions, and not to induce them into a transaction they would not have entered had the Defendant disclosed this information.

204.   By failing to disclose the Transmission Defect, Defendant knowingly and intentionally concealed material facts and breached its duty not to do so.

205.   Moreover, Defendant's intentional concealment of, and failure to disclose the Transmission Defect constitutes a false, misleading, or deceptive act or practice because, to the detriment of Plaintiff Schay, and the South Carolina Class Members, that act and practices took advantage of Plaintiff Schay, and Class Members' lack of knowledge, ability, and experience to a grossly unfair degree. Those false, misleading, or deceptive acts, and

51

practices were a producing cause of the economic damages sustained by Plaintiff Schay, and the South Carolina Class Members.

206.     The facts concealed or not disclosed by Defendant to Plaintiff Schay, and the South Carolina Class Members are material because a reasonable consumer would have considered them to be important in deciding whether or not to purchase the Class Vehicles, or to pay less for them.

207.     Had Plaintiff Schay, and the South Carolina Class Members known that the Class Vehicles suffer from the Transmission Defect, they would not have purchased the Class Vehicles or would have paid less for them.

208.     Plaintiff Schay, and the South Carolina Class Members are reasonable consumers who do not expect that their vehicles will suffer from a Transmission Defect. That is the reasonable, and objective consumer expectation for vehicle.

209.     As a result of Defendant's misconduct Plaintiff Schay, and the South Carolina Class Members have been harmed and have suffered actual and economic damages in that due to the Transmission Defect the Class Vehicles are defective and require repairs or replacement and are worth less money because of the Defect.

210.     Plaintiff Schay has provided adequate notice to Defendant.

211.     Plaintiff Schay, and the South Carolina Class Members should be awarded three times the amount of their economic damages because Defendant intentionally concealed and failed to disclose the defective nature of the Class Vehicles

**EIGHTH CAUSE OF ACTION**
**Breach of the Implied Warranty of Merchantability Pursuant to the**
**S.C. Code Ann. § 36-2-314**

**(Plaintiff Schay on behalf of the South Carolina Class)**

52

212.     Plaintiffs incorporate by reference all allegations contained in this Complaint as though fully stated herein.

213.     Defendant is a merchant with respect to motor vehicles.

214.     The Class Vehicles were subject to implied warranties of merchantability running from the Defendant to Plaintiff Schay and the South Carolina Class Members.

215.     An implied warranty that the Class Vehicles were merchantable arose by operation of law as part of the sale or lease of the Class Vehicles.

216.     Defendant breached the implied warranty of merchantability in that the Class Vehicles suffer from the defects referenced herein, and thus were not in merchantable condition when Plaintiff Schay and the South Carolina Class Members purchased, or leased the Class Vehicles, or at any time thereafter, and the Class Vehicles are unfit for the ordinary purposes for which such vehicles are used. Specifically, the Class Vehicles were, and are not fit for their ordinary purpose of providing reasonably reliable, and safe transportation because the Class Vehicles suffer from a Transmission Defect that can make driving unreasonably dangerous.

217.     As a result of Defendant's breach of the applicable implied warranties, owners, and lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles.  Defendant's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use.

## NINTH CAUSE OF ACTION
### Breach of Express Warranty under S.C. Code Ann. § 36-2-313

### (Plaintiff Schay on behalf of the South Carolina Class)

218.     Plaintiffs incorporate by reference all allegations contained in this Complaint as though fully stated herein.

219.    In connection with the sale or lease of the Class Vehicles to Plaintiff Schay, and South Carolina Class Members, Defendant provided Plaintiff Schay and South Carolina Class Members with a written warranty that provides, *inter alia*, that with respect to powertrain coverage Nissan would repair or replace defective powertrain components within the first 60 months in service.

220.    Plaintiff Schay, and South Carolina Class Members relied on Defendant's warranties when they agreed to purchase or lease the Class Vehicles and Defendant's warranties were part of the basis of the bargain.

221.    Plaintiff Schay, and South Carolina Class Members submitted their Vehicles for warranty repairs as referenced herein.  Defendant failed to comply with the terms of the express written warranty provided to each Class member, by failing, and/or refusing to repair the Transmission Defect under the vehicle's warranty as described herein.

222.    Plaintiff Schay and South Carolina Class Members have given Defendant reasonable opportunities to cure said defect, but Defendant has been unable, and/or has refused to do so within a reasonable time.

223.    As a result of said nonconformities, Plaintiff Schay, and South Carolina Class Members cannot reasonably rely on the Class Vehicles for the ordinary purpose of safe, reliable, comfortable, and efficient transportation.

224.    Plaintiff Schay, and South Carolina Class Members could not reasonably have discovered said nonconformities with the Class Vehicles prior to Plaintiff Schay and South Carolina Class Members' acceptance of the Class Vehicles.

225.    Plaintiff Schay, and South Carolina Class Members would not have purchased, or leased the Class Vehicles, or would have paid less for the Class Vehicles, had they known,

54

prior to their respective time of purchase or lease, that Class Vehicles contained the Transmission Defect.

226. As a direct and proximate result of the willful failure of Defendant to comply with its obligations under the express warranties, Plaintiff Schay, and South Carolina Class Members have suffered actual and consequential damages. Such damages include, but are not limited to, the loss of the use and enjoyment of their vehicles, and a diminution in the value of the vehicles containing the defects identified herein.

<u>**TENTH CAUSE OF ACTION**</u>
**Violation of the Texas Deceptive Practices Act**
**Tex. Bus. & Com. Code § 17.41, *et seq.***

**(Plaintiffs Gutierrez and Wilkins on behalf of the Texas Class)**

227. Plaintiffs incorporate by reference all allegations contained in this Complaint as though fully stated herein.

228. The Gutierrez and Wilkins Vehicles and the Texas Class Vehicles are "goods" under Tex. Bus. & Com. Code § 17.45(1) because they are tangible chattel that were purchased or leased for use.

229. Defendant is a "person" under Tex. Bus. & Com. Code § 17.45(3) because it is a corporation.

230. Plaintiffs Gutierrez and Wilkins and the Texas Class Members are "consumers" under Tex. Bus. & Com. Code § 17.45(4) because they sought, or acquired their vehicle by purchase.

231. At all relevant times, Defendant has engaged in "trade" and "commerce" under Tex. Bus. & Com. Code § 17.45(6) by advertising, offering for sale, selling, leasing, and/or distributing vehicles in the United States, including Texas, directly or indirectly affecting

55

Texas citizens through that trade and commerce.

232. The allegations set forth herein constitute false, misleading, or deceptive trade acts or practices in violation of Texas's Deceptive Trade Practices-Consumer Protection Act ("DTPA"), Tex. Bus. & Com. Code § 17.41, et seq.

233. By failing to disclose, and concealing the defective nature of the Class Vehicles' transmissions from Plaintiffs Gutierrez and Wilkins and Texas Class Members, Defendant violated the Texas Deceptive Practices Act as it represented that the Class Vehicles had characteristics and benefits that they do not have, represented that the Class Vehicles were of a particular standard, quality, or grade when they were of another, and advertised the Class Vehicles with the intent not to sell them as advertised.

234. Defendant's unfair, and deceptive acts or practices occurred repeatedly in Defendant's trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

235. Defendant knew that the Class Vehicles' transmissions suffered from an inherent defect, were defectively manufactured or made, would fail prematurely, and were not suitable for their intended use.

236. Defendant was under a duty to Plaintiffs Gutierrez and Wilkins and the Texas Class Members to disclose the defective nature of the Class Vehicles' transmissions because:

   a. Defendant was in a superior position to know the true state of facts about the safety defect contained in the Class Vehicles' transmissions;

   b. Plaintiff Gutierrez and the Texas Class Members could not reasonably have been expected to learn or discover that their vehicles' transmissions have a dangerous safety defect until after they purchased the Class Vehicles; and,

56

c.	Defendant knew that Plaintiffs Gutierrez and Wilkins and the Texas Class Members could not reasonably have been expected to learn about or discover the Transmission Defect.

237.	The facts concealed or not disclosed by Defendant to Plaintiffs Gutierrez and Wilkins, and Texas Class Members are material in that a reasonable person would have considered them to be important in deciding whether or not to purchase the Class Vehicles.

238.	Plaintiffs Gutierrez and Wilkins, and the Texas Class relied on Defendant to disclose material information it knew, such as the defective nature of the transmissions in the Class Vehicles, and not to induce them into a transaction they would not have entered had the Defendant disclosed this information.

239.	By failing to disclose the Transmission Defect, Defendant knowingly, and intentionally concealed material facts and breached its duty not to do so.

240.	Moreover, Defendant's intentional concealment of, and failure to disclose the Transmission Defect constitutes an "unconscionable action or course of action" under Tex. Bus. & Com. Code § 17.45(5) because, to the detriment of Plaintiffs Gutierrez and Wilkins, and the Texas Class, that conduct took advantage of Plaintiffs Gutierrez and Wilkins, and Class Members' lack of knowledge, ability, and experience to a grossly unfair degree.  That "unconscionable action or course of action" was a producing cause of the economic damages sustained by Plaintiffs Gutierrez and Wilkins, and the Texas Class.

241.	The facts concealed or not disclosed by Defendant to Plaintiffs Gutierrez and Wilkins, and the other Texas Class Members are material because a reasonable consumer would have considered them to be important in deciding whether or not to purchase the Class Vehicles, or to pay less for them.

57

242. Had Plaintiffs Gutierrez and Wilkins, and other Texas Class Members known that the Class Vehicles' transmissions were defective, they would not have purchased the Class Vehicles or would have paid less for them.

243. Plaintiffs Gutierrez and Wilkins, and the other Texas Class Members are reasonable consumers who do not expect that their vehicles will suffer from a Transmission Defect. That is the reasonable and objective consumer expectation for vehicles and their transmissions.

244. As a result of Defendant's misconduct, Plaintiffs Gutierrez and Wilkins, and the other Texas Class Members have been harmed and have suffered actual and economic damages in that the Class Vehicles and their transmissions are defective and require repairs or replacement and are worth less money because of the Defect.

245. In addition, Defendant is also liable under Tex. Bus. & Com. Code § 17.50(a) because Defendant's breach of the implied warranty of merchantability set forth below was a producing cause of economic damages sustained by Plaintiffs Gutierrez and Wilkins and the Texas Class Members.

246. Plaintiffs Gutierrez and Wilkins have provided adequate notice to Defendant.

247. Plaintiffs Gutierrez and Wilkins, and the Texas Class should be awarded three times the amount of their economic damages because Defendant intentionally concealed and failed to disclose the defective nature of the Class Vehicles

## ELEVENTH CAUSE OF ACTION
### Breach of the Implied Warranty of Merchantability Pursuant to the Tex. Bus. & Com. Code § 2.314

### (Plaintiffs Gutierrez and Wilkins on behalf of the Texas Class)

248. Plaintiffs incorporate by reference all allegations contained in this Complaint

58

as though fully stated herein.

249. Defendant is a merchant with respect to motor vehicles.

250. The Class Vehicles were subject to implied warranties of merchantability running from the Defendant to Plaintiffs Gutierrez and Wilkins and the Texas Class members.

251. An implied warranty that the Class Vehicles were merchantable arose by operation of law as part of the sale or lease of the Class Vehicles.

252. Defendant breached the implied warranty of merchantability in that the Class Vehicles suffer from the defects referenced herein and thus were not in merchantable condition when Plaintiffs Gutierrez and Wilkins and Texas class members purchased or leased the Class Vehicles, or at any time thereafter, and the Class Vehicles are unfit for the ordinary purposes for which such vehicles are used. Specifically, the Class Vehicles were, and are not fit for their ordinary purpose of providing reasonably reliable, and safe transportation because the Class Vehicles suffer from a Transmission Defect that can make driving unreasonably dangerous.

253. As a result of Defendant's breach of the applicable implied warranties, owners and lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Defendant's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use.

## TWELFTH CAUSE OF ACTION

### Breach of Express Warranty under Tex. Bus. & Com. Code Ann. § 2.313

### (Plaintiffs Gutierrez and Wilkins on behalf of the proposed Texas Class)

254. Plaintiffs incorporate by reference all allegations contained in this Complaint as though fully stated herein.

255. In connection with the sale or lease of the Class Vehicles to Plaintiffs Gutierrez

59

and Wilkins, and Texas Class members, Defendant provided Plaintiffs Gutierrez and Wilkins and Texas Class members with a written warranty that provides, *inter alia*, that with respect to powertrain coverage Nissan would repair or replace defective powertrain components within the first 60 months in service.

256.    Plaintiffs Gutierrez and Wilkins, and Texas Class members relied on Defendant's warranties when they agreed to purchase or lease the Class Vehicles, and Defendant's warranties were part of the basis of the bargain.

257.    Plaintiffs Gutierrez and Wilkins, and the Texas Class members submitted their Vehicles for warranty repairs as referenced herein.  Defendant failed to comply with the terms of the express written warranty provided to each Class member, by failing and/or refusing to repair the Transmission Defect under the vehicle's warranty as described herein.

258.    Plaintiffs Gutierrez and Wilkins, and Texas Class members have given Defendant reasonable opportunities to cure said defect, but Defendant has been unable and/or has refused to do so within a reasonable time.

259.    As a result of said nonconformities, Plaintiffs Gutierrez and Wilkins, and Texas Class members cannot reasonably rely on the Class Vehicles for the ordinary purpose of safe, reliable, comfortable, and efficient transportation.

260.    Plaintiffs Gutierrez and Wilkins, and Texas Class members could not reasonably have discovered said nonconformities with the Class Vehicles prior to Plaintiff Gutierrez and Wilkins' and Texas Class members' acceptance of the Class Vehicles.

261.    Plaintiffs Gutierrez and Wikins, and Texas Class members would not have purchased or leased the Class Vehicles, or would have paid less for the Class Vehicles, had they known, prior to their respective time of purchase or lease, that Class Vehicles contained

60

the Transmission Defect.

262. As a direct, and proximate result of the willful failure of Defendant to comply with its obligations under the express warranties, Plaintiffs Gutierrez and Wilkins, and Texas Class members have suffered actual and consequential damages. Such damages include, but are not limited to, the loss of the use and enjoyment of their vehicles, and a diminution in the value of the vehicles containing the defects identified herein.

<u>**THIRTEENTH CAUSE OF ACTION**</u>
**Violation of the Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59-1601,** *et seq*)

**(Plaintiff Booze on behalf of the Nebraska Class)**

263. Plaintiffs incorporate by reference all allegations contained in this Complaint as though fully stated herein.

264. Plaintiff Booze and Defendant are "person[s]" under Neb. Rev. Stat. § 59-1601(1).

265. Defendant's action as set forth herein occurred in the conduct of trade or commerce as defined under Neb. Rev. Stat. § 59-1601(2).

266. The allegations set forth herein constitute false, misleading, unfair or deceptive acts or practices in violation of the Nebraska Consumer Protection Act ("Nebraska CPA") prohibition on "unfair or deceptive acts or practices in the conduct of any trade or commerce." Neb. Rev. Stat. § 59-1602.

267. By failing to disclose, and concealing the defective nature of the Class Vehicles' transmissions from Plaintiff Booze and Nebraska Class Members, Defendant violated the Nebraska CPA as it represented that the Class Vehicles had characteristics and benefits that they do not have, represented that the Class Vehicles were of a particular standard, quality, or grade when they were of another, and advertised the Class Vehicles with

61

the intent not to sell them as advertised.

268.    Defendant's unfair, and deceptive acts or practices occurred repeatedly in Defendant's trade or business, were capable of deceiving a substantial portion of the purchasing public and imposed a serious safety risk on the public.

269.    Defendant knew that the Class Vehicles' transmissions suffered from an inherent defect, were defectively manufactured or made, and were not suitable for their intended use.

270.    Defendant was under a duty to Plaintiff Booze, and the Nebraska Class Members to disclose the defective nature of the Class Vehicles' transmissions because:

   a.    Defendant was in a superior position to know the true state of facts about the safety-related transmission defect contained in the Class Vehicles;

   b.    Plaintiff Booze and the Nebraska Class Members could not reasonably have been expected to learn or discover that their vehicles' transmission has a dangerous safety defect until after they purchased the Class Vehicles; and,

   c.    Defendant knew that Plaintiff Booze, and the Nebraska Class Members could not reasonably have been expected to learn about, or discover the Transmission Defect prior to purchase.

271.    The facts concealed or not disclosed by Defendant to Plaintiff Booze, and Nebraska Class Members are material in that a reasonable person would have considered them to be important in deciding whether or not to purchase the Class Vehicles.

272.    Plaintiff Booze, and Nebraska Class Members relied on Defendant to disclose material information it knew, such as the defective nature of the Class Vehicles' transmissions, and not to induce them into a transaction they would not have entered had the

62

Defendant disclosed this information.

273.    By failing to disclose the Transmission Defect, Defendant knowingly and intentionally concealed material facts and breached its duty not to do so.

274.    Moreover, Defendant's intentional concealment of, and failure to disclose the Transmission Defect constitutes a false, misleading, or deceptive act or practice because, to the detriment of Plaintiff Booze, and the Nebraska Class Members, that act and practices took advantage of Plaintiff Booze, and Class Members' lack of knowledge, ability, and experience to a grossly unfair degree.  Those false, misleading, or deceptive acts, and practices were a producing cause of the economic damages sustained by Plaintiff Booze, and the Nebraska Class Members.

275.    The facts concealed or not disclosed by Defendant to Plaintiff Booze, and the Nebraska Class Members are material because a reasonable consumer would have considered them to be important in deciding whether or not to purchase the Class Vehicles, or to pay less for them.

276.    Had Plaintiff Booze, and the Nebraska Class Members known that the Class Vehicles suffer from the Transmission Defect, they would not have purchased the Class Vehicles or would have paid less for them.

277.    Plaintiff Booze, and the Nebraska Class Members are reasonable consumers who do not expect that their vehicles will suffer from a Transmission Defect.  That is the reasonable, and objective consumer expectation for vehicle.

278.    As a result of Defendant's misconduct Plaintiff Booze, and the Nebraska Class Members have been harmed and have suffered actual and economic damages in that due to the Transmission Defect the Class Vehicles are defective and require repairs or replacement and

63

are worth less money because of the Defect.

279.     Plaintiff Booze has provided adequate notice to Defendant.

280.     Plaintiff Booze, and the Nebraska Class Members should be awarded three times the amount of their economic damages because Defendant intentionally concealed and failed to disclose the defective nature of the Class Vehicles

## FOURTEENTH CAUSE OF ACTION
**Breach of the Implied Warranty of Merchantability Pursuant to Neb. Rev. Stat. § UCC § 2-314)**

**(Plaintiff Booze on behalf of the Nebraska Class)**

281.     Plaintiffs incorporate by reference all allegations contained in this Complaint as though fully stated herein.

282.     Defendant is a merchant with respect to motor vehicles.

283.     The Class Vehicles were subject to implied warranties of merchantability running from the Defendant to Plaintiff Booze and the Nebraska Class Members.

284.     An implied warranty that the Class Vehicles were merchantable arose by operation of law as part of the sale or lease of the Class Vehicles.

285.     Defendant breached the implied warranty of merchantability in that the Class Vehicles suffer from the defects referenced herein, and thus were not in merchantable condition when Plaintiff Booze and the Nebraska Class Members purchased, or leased the Class Vehicles, or at any time thereafter, and the Class Vehicles are unfit for the ordinary purposes for which such vehicles are used. Specifically, the Class Vehicles were, and are not fit for their ordinary purpose of providing reasonably reliable, and safe transportation because the Class Vehicles suffer from a Transmission Defect that can make driving unreasonably dangerous.

64

286. As a result of Defendant's breach of the applicable implied warranties, owners, and lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Defendant's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use.

## FIFTEENTH CAUSE OF ACTION
## Breach of Express Warranty under Neb. Rev. Stat. § UCC § 2-313

### (Plaintiff Booze on behalf of the Nebraska Class)

287. Plaintiffs incorporate by reference all allegations contained in this Complaint as though fully stated herein.

288. In connection with the sale or lease of the Class Vehicles to Plaintiff Booze, and Nebraska Class Members, Defendant provided Plaintiff Booze and Nebraska Class Members with a written warranty that provides, *inter alia*, that with respect to powertrain coverage Nissan would repair or replace defective powertrain components within the first 60 months in service.

289. Plaintiff Booze, and Nebraska Class Members relied on Defendant's warranties when they agreed to purchase or lease the Class Vehicles and Defendant's warranties were part of the basis of the bargain.

290. Plaintiff Booze, and Nebraska Class Members submitted their Vehicles for warranty repairs as referenced herein. Defendant failed to comply with the terms of the express written warranty provided to each Class member, by failing, and/or refusing to repair the Transmission Defect under the vehicle's warranty as described herein.

291. Plaintiff Booze and Nebraska Class Members have given Defendant reasonable opportunities to cure said defect, but Defendant has been unable, and/or has refused to do so within a reasonable time.

292. As a result of these nonconformities, Plaintiff Booze, and Nebraska Class Members cannot reasonably rely on the Class Vehicles for the ordinary purpose of safe, reliable, comfortable, and efficient transportation.

293. Plaintiff Booze, and Nebraska Class Members could not reasonably have discovered these nonconformities with the Class Vehicles prior to Plaintiff Booze and Nebraska Class Members' acceptance of the Class Vehicles.

294. Plaintiff Booze, and Nebraska Class Members would not have purchased, or leased the Class Vehicles, or would have paid less for the Class Vehicles, had they known, prior to their respective time of purchase or lease, that Class Vehicles contained the Transmission Defect.

295. As a direct and proximate result of the willful failure of Defendant to comply with its obligations under the express warranties, Plaintiff Booze, and Nebraska Class Members have suffered actual and consequential damages. Such damages include, but are not limited to, the loss of the use and enjoyment of their vehicles, and a diminution in the value of the vehicles containing the defects identified herein.

## SIXTEENTH CAUSE OF ACTION
### Violation of Florida Deceptive and Unfair Trade Practices Act,
### F.S.A. § 501.201, et seq.

### (Plaintiff Hoffman on behalf of the Florida Class)

296. Plaintiffs incorporate by reference all allegations contained in this Complaint as though fully stated herein.

297. Plaintiff Hoffman and the Florida Class Members are each an "interested party or person" and "consumer" as defined by F.S.A. 501.203(6) and (7) respectively.

298. At all relevant times, Defendant has engaged in "Trade" and "Commerce" as

66

defined by F.S.A. 501.203(8) by advertising, offering for sale, selling, leasing, and/or distributing vehicles in the United States, including Florida, directly or indirectly affecting Florida citizens though that trade and commerce.

299.    The allegations set forth herein constitute false, misleading, unlawful or deceptive trade practice under F.S.A. 501.201, et seq.

300.    By failing to disclose, and concealing the defective nature of the Class Vehicles' transmissions from Plaintiff Hoffman and Florida Class Members, Defendant violated the Florida Deceptive and Unfair Trade Practices Act, as it represented that the Class Vehicles had characteristics and benefits that they do not have, represented that the Class Vehicles were of a particular standard, quality, or grade when they were of another, and advertised the Class Vehicles with the intent not to sell them as advertised.

301.    Defendant's unfair, and deceptive acts or practices occurred repeatedly in Defendant's trade or business, were capable of deceiving a substantial portion of the purchasing public and imposed a serious safety risk on the public.

302.    Defendant knew that the Class Vehicles' transmissions suffered from an inherent defect, were defectively manufactured or made, and were not suitable for their intended use.

303.    Defendant was under a duty to Plaintiff Hoffman, and the Florida Class Members to disclose the defective nature of the Class Vehicles' transmissions because:

   a.    Defendant was in a superior position to know the true state of facts about the safety-related transmission defect contained in the Class Vehicles;

   b.    Plaintiff Hoffman and the Florida Class Members could not reasonably have been expected to learn or discover that their vehicles' transmission has a

67

dangerous safety defect until after they purchased the Class Vehicles; and,

c.     Defendant knew that Plaintiff Hoffman, and the Florida Class Members could not reasonably have been expected to learn about, or discover the Transmission Defect prior to purchase.

304.     The facts concealed or not disclosed by Defendant to Plaintiff Hoffman, and Florida Class Members are material in that a reasonable person would have considered them to be important in deciding whether or not to purchase the Class Vehicles.

305.     Plaintiff Hoffman, and Florida Class Members relied on Defendant to disclose material information it knew, such as the defective nature of the Class Vehicles' transmissions, and not to induce them into a transaction they would not have entered had the Defendant disclosed this information.

306.     By failing to disclose the Transmission Defect, Defendant knowingly and intentionally concealed material facts and breached its duty not to do so.

307.     Moreover, Defendant's intentional concealment of, and failure to disclose the Transmission Defect constitutes a false, misleading, or deceptive act or practice because, to the detriment of Plaintiff Hoffman, and the Florida Class Members, that act and practices took advantage of Plaintiff Hoffman, and Class Members' lack of knowledge, ability, and experience to a grossly unfair degree.  Those false, misleading, or deceptive acts, and practices were a producing cause of the economic damages sustained by Plaintiff Hoffman, and the Florida Class Members.

308.     The facts concealed or not disclosed by Defendant to Plaintiff Hoffman, and the Florida Class Members are material because a reasonable consumer would have considered them to be important in deciding whether or not to purchase the Class Vehicles, or

68

to pay less for them.

309.     Had Plaintiff Hoffman, and the Florida Class Members known that the Class

Vehicles suffer from the Transmission Defect, they would not have purchased the Class

Vehicles or would have paid less for them.

310.     Plaintiff Hoffman, and the Florida Class Members are reasonable consumers

who do not expect that their vehicles will suffer from a Transmission Defect.  That is the

reasonable, and objective consumer expectation for vehicle.

311.     As a result of Defendant's misconduct Plaintiff Hoffman, and the Florida Class

Members have been harmed and have suffered actual and economic damages in that due to the

Transmission Defect the Class Vehicles are defective and require repairs or replacement and

are worth less money because of the Defect.

312.     Plaintiff Hoffman has provided adequate notice to Defendant.

313.     Plaintiff Hoffman, and the Florida Class Members should be awarded three

times the amount of their economic damages because Defendant intentionally concealed and

failed to disclose the defective nature of the Class Vehicles

## SEVENTEENTH CAUSE OF ACTION
### Breach of Express Warranty under F.S.A. § 672.313

### (Plaintiff Hoffman on behalf of the Florida Class)

314.     Plaintiffs incorporate by reference all allegations contained in this Complaint

as though fully stated herein.

315.     In connection with the sale or lease of the Class Vehicles to Plaintiff Hoffman,

and Florida Class Members, Defendant provided Plaintiff Hoffman and Florida Class

Members with a written warranty that provides, *inter alia*, that with respect to powertrain

coverage Nissan would repair or replace defective powertrain components within the first 60

months in service.

316. Plaintiff Hoffman, and Florida Class Members relied on Defendant's warranties when they agreed to purchase or lease the Class Vehicles and Defendant's warranties were part of the basis of the bargain.

317. Plaintiff Hoffman, and Florida Class Members submitted their Vehicles for warranty repairs as referenced herein. Defendant failed to comply with the terms of the express written warranty provided to each Class member, by failing, and/or refusing to repair the Transmission Defect under the vehicle's warranty as described herein.

318. Plaintiff Hoffman and Florida Class Members have given Defendant reasonable opportunities to cure said defect, but Defendant has been unable, and/or has refused to do so within a reasonable time.

319. As a result of these nonconformities, Plaintiff Hoffman, and Florida Class Members cannot reasonably rely on the Class Vehicles for the ordinary purpose of safe, reliable, comfortable, and efficient transportation.

320. Plaintiff Hoffman, and Florida Class Members could not reasonably have discovered these nonconformities with the Class Vehicles prior to Plaintiff Hoffman and Florida Class Members' acceptance of the Class Vehicles.

321. Plaintiff Hoffman, and Florida Class Members would not have purchased, or leased the Class Vehicles, or would have paid less for the Class Vehicles, had they known, prior to their respective time of purchase or lease, that Class Vehicles contained the Transmission Defect.

322. As a direct and proximate result of the willful failure of Defendant to comply with its obligations under the express warranties, Plaintiff Hoffman, and Florida Class

70

Members have suffered actual and consequential damages.  Such damages include, but are not limited to, the loss of the use and enjoyment of their vehicles, and a diminution in the value of the vehicles containing the defects identified herein.

## **DEMAND FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves  and all others similarly situated, pray for judgment against Defendant as follows:

a.  An order certifying the proposed Classes, designating Plaintiffs as named representative of the Classes, and designating the undersigned as Class Counsel;

b.  An order awarding Plaintiffs and class members their actual damages, incidental and consequential damages, punitive damages, and/or other form of monetary relief provided by law;

c.  An order awarding Plaintiffs and the classes restitution, disgorgement, or other equitable relief as the Court deems proper;

d.  Equitable relief including, but not limited to, replacement of the Class Vehicles with new vehicles, or repair of the defective Class Vehicles with an extension of the express warranties and service contracts which are or were applicable to the Class Vehicles;

e.  A declaration requiring Defendant to comply with the various provisions of the state and federal consumer protection statutes herein alleged and to make all the required disclosures;

f.  Reasonable attorneys' fees and costs;

g.  Pre-judgment and post-judgment interest, as provided by law;

71

h.  Plaintiffs demand that Defendant perform a recall, and repair all Class Vehicles; and

i.  Such other and further relief as this Court deems just and proper.

Dated: July 27, 2022                 Respectfully submitted,

                                     By:     */s/Susan S. Lafferty*
                                             Susan S. Lafferty, BPR #025961
                                             Lafferty Law Firm, Inc.
                                             1321 Murfreesboro Pike, Suite 521
                                             P.O. Box 292977
                                             Nashville, TN 37229
                                             Telephone: (615) 878-1926
                                             Facsimile: (615) 472-7852

                                             Stephen Taylor (admitted *pro hac vice*)
                                             LEMBERG LAW, L.L.C.
                                             43 Danbury Road
                                             Wilton, CT 06897
                                             Telephone: (203) 653-2250
                                             Facsimile:  (203) 653-3424

                                             *Attorneys for Plaintiffs*